## ZANE CETTI v. R. L. AND L. E. DUNMAN.

Decided June 8, 1901.

**1.—Husband and Wife—Community Property—Husband's Power—Fraud.**

Although the husband is by law given control of the community property, his acts in relation thereto will not bind the wife where they are not done in good faith and relate to a matter, such as the homestead, wherein he would not be empowered to act alone. See case where the husband procured a sale of the homestead on credit and afterwards, in fraud of the wife, appropriated and disposed of the vendor's lien notes taken for the property, and agreed to a judgment foreclosing the lien, which is held not binding on the wife.

**2.—Same—Limitations—Fraud Against Wife.**

The wife, suing to set aside a judgment foreclosing a lien on the homestead because of fraud in which the husband participated, is not barred by limitations by reason of the fact that the husband is barred, nor will limitations run against her except from the discovery of the fraud.

**3.—Judgment—Setting Aside for Fraud—False Representations of Counsel.**

Fraud in procuring an agreed judgment foreclosing a purported vendor's lien on homestead property and effected through false representations of counsel for plaintiffs to the effect that his client was an innocent purchaser before maturity of the lien notes sued on, affords sufficient ground for setting aside the judgment at the instance of the wife whose counsel was deceived by such representations and relied on them in consenting to the judgment.

**4.—Same—Fraudulent Intent.**

Where a case of actual fraud is made, the purpose of the fraudulent conduct or statement is immaterial.

**5.—Attorney and Client—Agreed Judgment.**

An attorney employed by the wife to assert her homestead claim in a pending suit has not the power, by virtue of his general employment, to surrender the case and agree to a judgment against his client because of his reliance upon representations made by counsel for the other party.

**6.—Homestead—Simulated Sale.**

See facts held to warrant the trial court in charging upon the theory that a sale of the homestead was simulated, and not such as to pass the title.

**7.—Assignment of Error.**

Where an assignment of error consists of several paragraphs, each submitting issues diverse from the others and presenting different propositions of law, it is not entitled to consideration.

**8.—Fraud—Ratification.**

The filing of a suit brought to set aside a judgment fraudulently obtained and its dismissal in order to be filed in another county, is not a ratification of the fraud.

Appeal from Tarrant. Tried below before Hon. Irby Dunklin.

*A. M. Carter,* for appellant.

*Capps & Cantey* and *Sims & Snodgrass,* for appellees.

CONNER, CHIEF JUSTICE.—This suit was instituted in the District Court of Tarrant County on the 16th day of September, 1899, by Mrs. L. E. Dunman, joined pro forma by her husband, R. L. Dunman, against Zane Cetti, J. P. Smith, and W. C. Perry and R. L. Dunman, to set aside a judgment of said court rendered in favor of said Cetti on the 12th day of December, 1894, against W. C. Perry, as the maker, and J. P. Smith, as indorser, of certain vendor lien notes, and against the said L. E. and R. L. Dunman, foreclosing the vendor's lien on certain land situated in Coleman County, claimed by Mrs. Dunman as her homestead. Cetti answered by demurrer, general denial, two and four years statute of limitation, and special matter that need not here be noticed. The trial resulted in a verdict and judgment for appellees in accord with their prayer, setting aside said judgment of December 12, 1894, and canceling the proceedings thereunder by virtue of which Cetti, by cross-bill, claimed the land involved.

Among other things it appears that on October 13, 1893, R. L. Dunman executed and delivered to J. P. Smith a promissory note for $5000, payable in six months from its date, and to secure its payment "pledged

and hypothecated" three certain promissory notes, dated September 7, 1893, aggregating $12,500, executed by W. C. Perry to R. L. Dunman, due in eight, twelve and eighteen months from date, and reserving the vendor's lien on the tract of land at all times herein named, occupied by R. L. and L. E. Dunman as their homestead. Thereafter, on August 30, 1894, Zane Cetti instituted suit in the District Court of Tarrant County, Texas, against R. L. and L. E. Dunman, W. C. Perry, and J. P. Smith, declaring upon the notes and pledge above mentioned, and alleged that the same had been assigned and delivered to him by J. P. Smith, who resided in Tarrant County, and prayed for judgment with foreclosure of vendor's lien. The Dunmans and Perry appeared and answered·by plea to the jurisdiction of the court, alleging their residence and the location of the land involved to be in Coleman County, and charging that the indorsement of the vendor's lien notes by Smith to Cetti was "for the sole purpose of fraudulently conferring jurisdiction," no homestead plea being set up. Thereafter, on December 12, 1894, the judgment, the cancellation of which was sought in the present suit, was rendered. This judgment was rendered on an agreement set out therein, signed by T. H. Strong, as attorney for R. L. and L. E. Dunman and W. C. Perry, and by the respective attorneys for Cetti and J. P. Smith, and was to the effect that Cetti should recover of Perry, as the maker, and R. L. Dunman, as indorser, $15,487.82, the aggregate amount of said vendor's lien notes, with foreclosure of lien on said homestead land, describing it, and providing that if said amount of money was not paid before the expiration of one year from the date of the judgment, order of sale should issue, etc. Smith and R. L. Dunman were discharged altogether as to the $5000 note executed by R. L. Dunman. It further appears that this judgment was not paid within the year, and that on February 21, 1896, order of sale issued as therein provided by virtue of which the land in controversy was sold to Cetti.

In her petition to set aside the above proceedings, Mrs. L. E. Dunman alleges, in substance, among other things, that the transaction in which W. C. Perry executed said vendor's lien notes was a simulated sale to him of the homestead for the purpose of thereby more effectually making an advantageous sale then contemplated to one Rogers; that upon the day said notes were executed the plaintiff, joined by her husband, R. L. Dunman, made a pretended deed to W. C. Perry purporting to convey said homestead for $15,000, of which $2500 purported to be cash, and the remainder to be secured by the vendor's lien notes mentioned; that no actual sale or passage of title was intended, the sole purpose, as represented by the husband, being to thereby make a more advantageous sale to Rogers than could otherwise be made, it being alleged that Mrs. Dunman was further induced to join in the conveyance upon the distinct agreement that said notes were to be delivered to and kept by her until the sale to Rogers, when she was to receive all the money received from Rogers, it not being intended that Perry should receive any part thereof, or ever be called upon to pay said notes; that she in fact received said notes and

put the same away among her private papers to be kept by her; that the husband and Perry did not act in good faith with her, their purpose being to thereby effectuate a plan or agreement of Dunman and J. P. Smith theretofore entered into to thus procure vendor lien notes apparently valid with which to liquidate the indebtedness of Dunman to Smith; that pursuant to the purpose stated R. L. Dunman, without the knowledge or consent of his wife, abstracted said notes and hypothecated and delivered the same to Smith to secure the $5000 note to Smith, and Smith thereafter assigned or indorsed them to Cetti, of all which Mrs. Dunman alleged she was without notice until the institution of said suit by Cetti, whereupon she employed said T. H. Strong to represent her, with special direction to plead her homestead right; that Strong, without her knowledge or consent, entered into said agreed judgment, being induced thereto by the false and fraudulent representations and assurance of counsel for Cetti to the effect that Cetti was an innocent purchaser of said vendor's lien notes for value before maturity and without notice of her home claim; that she was not present at the time and place of the agreed judgment, but in Coleman County; that upon the return of her husband she inquired of him what had been done in the Fort Worth suit, and that in answer thereto R. L. Dunman fraudulently concealed from her the true facts and falsely assured her that the said suit had been compromised, settled and that her homestead rights had been fully protected; that she remained in ignorance of said false representations of Cetti's counsel and of said unauthorized agreed judgment until after the issuance of the order of sale of February 21, 1896, whereupon, by advice of her then attorneys, she instituted suit in Coleman County, Texas, to establish her homestead right, but which suit, upon advice of other counsel, was dismissed and the present suit instituted. It was also alleged that Smith and Cetti had notice of the material facts alleged, and that if Cetti ever held or owned said vendor's lien notes at all, it was as collateral security merely for a debt due from Smith not exceeding $800.

The pleadings of the several parties, with exhibits, etc., cover some 83 of the 293 pages of the transcript before us, but the foregoing statement it is believed will be sufficient to an understanding of the general features of the case presented on this appeal.

While in some particulars the evidence is conflicting, we think there can be but little serious contention that it is insufficient to support the verdict. Appellee having secured that verdict and its approval and the judgment thereon by the trial court, it becomes our duty to accept as true the material facts alleged by Mrs. Dunman that are necessary to sustain the judgment below, and we so conclude.

One of the material contentions in various forms made is that, as alleged and proven, Mrs. Dunman's cause of action, if any she ever had, was barred as a matter of law. We have been unable to so conclude. The fact that R. L. Dunman is barred will not conclude the wife as contended, for while it is true that by statute the husband is given control

of the community property, as the homestead here involved was shown to be, and that his acts and conduct in relation thereto bind the wife as a general rule, it is only so where he acts in good faith and in a matter where by law he would be empowered to act alone. Says Chief Justice Moore, in Eckhardt v. Schlecht, 29 Texas, 132: "It can not, of course, be supposed that the fraudulent declarations or conduct of the husband, to which the wife is not privy, will be held in equity to pass the title to the homestead, or create any charge upon it which the husband could not make by deed." See also Newman v. Farquhar, 60 Texas, 640, and Cole v. Bammel, 62 Texas, 108. Assuming it to be also true, as indicated in Hussey v. Maser, 70 Texas, 42, that Mrs. Dunman's coverture will not exempt her from the operation of the general law of limitation because of her right to sue at any time, yet it must be conceded, ·we think, that in cases of fraud as here alleged, limitation would not begin as against Mrs. Dunman until she discovered the fraud, or might have done so by the exercise of due diligence; and this issue was duly submitted to the jury. Under the allegation and proof Mrs. Dunman did not discover the fraud and unauthorized act of her attorney until after the issuance of the order of sale, February 21, 1896, and she instituted this suit within less than four years thereafter; the four years statute of limitation in our judgment applies, and we therefore can not say that Mrs. Dunman was barred of her action as matter of law, we being unable to agree with appellant's further contention that no sufficient excuse was alleged or shown why she did not earlier discover the fraud and institute her suit. The question as to what constitutes reasonable care or negligence is rarely one of law and under the averments and proof in this case we think the jury have settled in appellees' favor the issues involved in the pleas of limitation. In addition to which we add that it may be doubted whether, in view of Cetti's cross-bill, the question of limitation is entirely applicable. Cetti thereby asserts title to the land in question by virtue of the very proceedings attacked for fraud, and to the extent that this suit is a resistance of the cross-plea, the fraud alleged and proven would in any event seem to be an answer. See Drinkard v. Ingram, 21 Texas, 650.

It is also insisted that the allegation and proof of fraudulent representations on the part of Cetti's counsel to T. H. Strong, the attorney for Mrs. Dunman, is insufficient to authorize a setting aside of the judgment in that Strong had no right to rely upon such representations; that no actual fraud was shown to have been committed by either of said counsel, and that Strong having authority to represent Mrs. Dunman, his acts and agreements were binding on her. The allegation, in substance, was that Cetti's counsel, for the purpose of inducing Strong to abandon Mrs. Dunman's defense, and of consenting to the agreed judgment, represented that Cetti was a purchaser of the vendor's lien notes for value before maturity and without notice of Mrs. Dunman's homestead claim. There was evidence tending to show that Smith had actual notice of the

vice in the transactions alleged, and that Cetti, at best, acquired the notes after maturity of the first vendor's lien note, as collateral security for some $800 that Smith owed him, and by the charge the jury were not authorized to find for appellee on this issue unless they found that the representations had been made as alleged and for the purpose alleged. If so, and if Strong believed the representations to be true, and was induced thereby to take the course he did, when otherwise he would and could have maintained appellee's defense, as was submitted by the court, we think the legal effect the same, even though Cetti's counsel may, through his client or otherwise, have believed his statements to be true. The case alleged and submitted was one of actual fraud, but whether so or not in purpose is immaterial to the result.    Mitchel v. Zimmerman, 4 Texas, 75; Culberson v. Blanchard, 79 Texas, 492.    Nor is it a sufficient answer to say that Strong could in no event place credence in assurances of his opposing counsel.    Cetti's position and averment in the suit was that of a bona fide holder of the vendor's lien notes.    He and his counsel may well be presumed to have best known the true facts, and if, for the purpose alleged, the false statements charged were deliberately made in behalf of Cetti, we know of no rule of law enabling him to profit thereby, or that required Strong to impute to his adversary brother in the profession a purpose to thereby commit a fraud.    The very general integrity of the profession and the known character for truth and probity of the particular counsel concerned repels the idea that statements made under the circumstances alleged in this case must as a matter of law be assumed to be false.    Nor can it be said that Strong, by virtue of his general employment as Mrs. Dunman's attorney, had authority to consent to the judgment in question.    It is undisputed that he was without any special authority from Mrs. Dunman to do so; on the contrary, his instructions and duty alike required him to press the facts constituting Mrs. Dunman's defense to her homestead, and however laudable and honest his purpose, he was without authority to surrender the case committed to him and agree to a judgment against his client.    See Lindsey v. Sparks, 20 Texas Civ. App., 56; Roller v. Woolridge, 46 Texas, 496; Hickey v. Stringer, 3 Texas Civ. App., 45.

Another contention is that the court was in error in instructing the jury that if they should find to be true the facts alleged by Mrs. Dunman relating to the deed to Perry, they should find that it was simulated and did not pass the title to the homestead.    As applied to the facts, we find no error in this.    In effect Perry, in the form of a deed reserving a lien, was appointed a mere agent to effect a sale intended. Perry paid no cash, the notes were not to be enforced against him, no possession was delivered, and in purpose no real change was made in the status of the parties.    The transaction may not have been "simulated," for the purpose intended by Mrs. Dunman, but was so for all purposes of this suit.

Appellant's twenty-second assignment of error is as follows: "The

court erred in subdivision eight of his charge to the jury, which is as follows:" Subdivision eight is then set out, containing three distinct paragraphs, each paragraph submitting diverse issues from the others, and the whole followed by propositions presenting independent propositions of law. Appellee's objections to this assignment would seem to be well taken. See Rules; Cannon v. Cannon, 66 Texas, 682; Railway v. Able, 72 Texas, 150, and other authorities on the same subject. Were we called upon to consider the assignment, however, we think the charge fails to support the propositions made thereunder. As urged in the first proposition thereunder, the court did not charge that Strong's want of authority of itself authorized a setting aside of the judgment. The second proposition is within itself objectionable as containing a number of independent propositions; and the matter urged in the third proposition we think could not have been prejudicial.

We find no merit in the contention that by the institution of the Coleman County suit Mrs. Dunman ratified the fraud and unauthorized acts resulting in the judgment vacated by the decree, and while a number of other questions have been presented, we find it impracticable to discuss them. Believing that in what we have said a brief answer to the material questions involved may be found, we will conclude by saying that all assignments have been carefully examined and considered, and we have found no reversible error thereby presented. In our judgment the petition was not subject to the demurrers urged. The facts alleged, if true, authorized the result. There was evidence supporting the material allegations of the petition and tending to excuse appellee's delay in the institution of her suit, and we therefore conceive it to be our duty to affirm the judgment below, and it is so ordered.

*Affirmed.*

Writ of error refused.