## EARLY v. BURNS et ux.

### No. 3682.

Court of Civil Appeals of Texas. Beaumont.
June 17, 1940.

Rehearing Denied June 26, 1940.

Edward A. Belsterling and James L. McNees, both of Dallas, for appellant.

Albert S. Reagan and Ellis P. House, both of Dallas for appellees.

O'QUINN, Justice.

On June 9, 1927, Lee Arthur Burns, appellee, an ignorant negro, purchased from W. F. Skillman and appellant, H. C. Early, lots 1 and 2 in block No. 1726–4 of the Jenkins-Broughton subdivision of blocks 1731 and 1736, of Dallas, Texas, according to its map as recorded in volume 3, page 400, of the Records of Maps and Plats of Dallas county. The consideration was $1,800, payable $100 in cash and two vendor's lien notes, note No. 1 for $1,000, constituting the first lien, payable in five years after date, with interest at eight per cent per annum, payable semi-annually, and also secured by a deed of trust; note No. 2 was for $700, payable in monthly installments of $20. When purchased by appellee, lots 1 and 2 were vacant; about a month after making the purchase he erected improvements on the lots of the reasonable value of $2,300. On June 9, 1932, the maturity date of note No. 1, appellee, joined by his wife who is also an appellee, as a renewal and extension of the notes Nos. 1 and 2, executed their note in the sum of $1,340.75, secured by a deed of trust against the property. Appellees continued making payments to appellant after the execution of the renewal note. On December 1, 1936, through a sale by his trustee, under the terms of the deed of trust appellant undertook to foreclose his deed of trust lien against the property, but appellees were not dispossessed under this sale. On June 5, 1936, appellant filed his suit in trespass to try title in Dallas county against appellees to recover the title and possession of the property. On July 6, 1937, appellees, through their attorney, filed an answer to appellant's trespass to try title suit, consisting of a general demurrer, general denial and pleas of not guilty. The case came on for trial December 8, 1937. Appellees knew nothing of the setting of the case, and were not present. Their attorney did not appear in the case, but left the court room before the jury was impaneled. He took no part in the trial;

offered no defense on behalf of appellees. He left the court room while appellant's attorney was picking a jury. Appellant's attorney testified as follows, in explanation of the conduct of appellees' attorney:

"He left, I think, while the jury was being impaneled.

"Q. Did he tell you to go ahead and take judgment, either by note or word of mouth? A. He didn't stay to take judgment, he wrote on a little note or a scrap of paper for me to go ahead and try the case, and he went shortly after that."

On December 8, 1937, judgment was rendered in that case in favor of appellant against appellees on an instructed verdict. On June 9, 1938, appellees filed their bill of review against the judgment rendered against them in the trespass to try title case. That suit was later dismissed, but refiled on an agreement that the issue of diligence in filing the second suit would relate back to the filing of the original bill.

The bill of review was tried on the following agreement:

"The Court: It is understood both sides have closed, unless the Court opens up this case again, which I am not likely to do under any circumstances.

"Mr. House: I don't have anything in mind to offer further.

"The Court: Without agreeing that the case can be reopened, and without prejudicing anybody's right to make application to re-open, we will say the case is closed, and it is going to be hard to get this Court to re-open the case.

"Mr. House: It is agreed between the parties, plaintiff and defendant, to submit this case to the Jury on one special issue as follows:

" 'Do you find from a preponderance of the evidence that the plaintiffs, Lee A. Burns and wife, at the time of the foreclosure of the deed of trust on the 1st day of December, A. D., 1936, were in default with the payment of the principal or interest on the $1370.75 note dated June 9, A. D., 1932.

" 'Answer "Yes" or "No." '

"It is further agreed between the parties that in the event this issue is answered favorable to the defendant, that the Court will enter its judgment reciting its findings on all issues against the plaintiffs raised by the evidence or pleadings or both, and that in the event the issue is found in favor of the plaintiffs, that the Court will likewise enter judgment setting out his findings against the defendant, on all issues raised by the pleadings and evidence.

"It is further agreed that the defendant shall present his motion for an instructed verdict, and that either party desiring to appeal from the verdict of the Jury and judgment of the Court shall have the right to appeal and defendant having the right to raise, should the Court overrule his motion for an instructed verdict, before the Appellate Court that question.

"It is further agreed that either party appealing shall have the right to assign for the consideration of the Appellate Court in his motion for a new trial all assignments of error as they appear to him occurring during the progress of the trial, and it is specifically and clearly agreed that neither party losing this case shall raise any question as to the finding by the Court and the failure to submit other issues herein, it being agreed as above, that the Court's findings of fact on its judgment shall be in all things in such manner as supports the findings of the Jury on the issues submitted. Of course, we will be governed by our exceptions as shown in the record.

"Mr. Burke: Counsel for defendant does not agree that the judgment rendered by this Court based upon the verdict of the Jury, but defendant agrees that if said issue should be answered favorable to the plaintiffs he agrees not to contest plaintiffs' motion for any judgment based upon said verdict. It being the intention of the defendant that without the consent of defendant, the plaintiffs' application for judgment in the form presented by him to the Court shall not be contested and that upon the entry of such judgment by the Court for the plaintiff, the defendant shall only be present and have the right to reserve his exception to the entry of a judgment.

"The Court: That is the agreement now."

Only the question set out in the agreed statement was submitted to the jury, and was answered in the negative, that is, that at the time of the foreclosure of the deed of trust on the 1st day of December, A. D. 1936, plaintiffs, Lee A. Burns and wife, were not in default with the payment

of the principal or interest on the $1,340.75 note dated June 9, 1932. The court entered the following judgment on the verdict of the jury—the agreement was also set out in the judgment:

"Thereafter, to-wit, on the 27 day of July, 1939, Defendant filed a motion to strike the above agreement and stipulation and the Court after having considered said motion and after hearing counsel thereon, is of the opinion that said agreement or stipulation reflected the true agreement of the parties touching the matters to which it relates, and that same was and is a valid and binding agreement and stipulation, upon which all parties to the suit acted and relied in the conduct of said cause and in the submission of same to the Jury, and the Court, accordingly did, on the 14 day of September, 1939, overrule and deny the motion of defendant to strike said stipulation, and has, and hereby does, adjudge and decree the same to be a valid, binding stipulation upon all parties to this cause.

"And it further appearing to the Court that Plaintiffs, before the entry of any judgment in this cause, requested that they be allowed to with-draw their suit insofar as same sought a recovery of money, damages or rentals, without prejudice.

"The court, therefore, under the authority of and in compliance with said stipulation or agreement, and the verdict of the jury, has, and does hereby, find all issues raised by the pleadings and evidence in favor of Plaintiffs and against Defendants, except the issue as to Plaintiffs' damages, which has been withdrawn by Plaintiffs under the authority of the Court as aforesaid and by agreement of Defendant, without prejudice.

"It is therefore, ordered, adjudged and decreed by the Court that Plaintiffs, Lee Arthur Burns and wife, Ludie Burns, do have and recover of Defendant, H. C. Early, title and possession to the property described in Plaintiffs Petition, and that title to same be in all things divested out of H. C. Early and vested in Plaintiffs; that the Trustees Deed made, executed and delivered by the Trustee, Edward A. Belsterling, to Defendant, H. C. Early, dated on or about September 1st, 1936, be and the same is hereby cancelled and declared void and in all things set aside and held for naught; that the Judgment in Cause Number 29828–A, styled Early vs. Burns in the District Court of Dallas County, Texas, be, and the same is hereby in all things set aside and made void in whole and in part; that the three notes in the principal sums of $1000.00, $700.00 and $1340.75 be, and each of them is hereby cancelled and declared fully paid, together with any and all liens securing same.

"It is further ordered, adjudged and decreed .by the Court that Plaintiffs do have and recover of Defendant all costs in this behalf expended, for all of which let execution issue."

Appellant duly prosecuted his appeal to the Dallas Court of Civil Appeals. The case is on our docket by order of transfer by the Supreme Court.

■ The court did not err in refusing to strike the agreement upon which the case was tried. The evidence on the motion to strike was to the general effect—at least it raised the issue in support of the court's ruling—that the agreement was deliberately made by counsel for both parties, and was given to the judge in open court in the presence and hearing of counsel for both parties, and that the agreement in fact was heard by appellant's counsel as it was given to the court, and that appellant's counsel made the addition to the agreement as indicated therein. The agreement was not ambiguous, and no confusion should arise as to its terms and general tenor. It was clearly stated in the agreement that, in support of the jury's answer to the agreed question, the court should find all issues raised by the pleading and with support in the evidence. Further, appellant reserved the right to insist upon his motion for an instructed verdict, and to complain of the court's ruling thereon if against him. The agreement was one the parties had the right to make, and it was the duty of the court to enforce it. 39 Tex.Jur. 285; White v. McFarlin, 77 Tex. 596, 14 S.W. 200; State Life Ins. Co. v. Duke, Tex.Civ.App., 69 S.W.2d 791. Under the right reserved to him in the agreement, appellant assigns error in the overruling of his motion for an instructed verdict on the following grounds: (a) The pleadings upon which the case was tried were legally insufficient because appellees did not plead facts sufficient in law to vacate the judgment in trespass to try title; (b) on the face of the pleadings, and under the evidence, appellees were guilty of laches in filing their bill of review; (c)

the evidence did not raise against appellant the issue of "fraud," "accident," or "mistake," in procuring the judgment in trespass to try title against appellees.

On the merits of the controversy between appellant and appellees, appellant insists that he was entitled to an instructed verdict because the evidence does not support the judgment of the court cancelling the note in the sum of $1,340.75, dated on the 9th day of June, 1932.

First. On the assignment against the sufficiency of the bill of review to state a cause of action: In paragraph one, appellees plead their names, the name of appellant, and of appellant's trustee, Edward W. Belsterling. In paragraph two, they plead that they purchased the property from Early and Skillman on the 9th day of June, 1927, giving its description. In paragraph three, they plead the consideration given by them for the property, as stated above. In paragraph four, they plead that Skillman, by transfer dated February 7, 1929, transferred his interest in the vendor's lien notes to appellant. In paragraphs five and six, they plead the execution of the renewal note in the sum of $1,340.75, and the deed of trust, as stated above. In paragraph 7, they plead the filing of the trespass to try title suit against them by appellant on the 15th day of June, 1937; that they were duly served with citation therein; that they employed an attorney to defend them in the suit; and that the defendant filed a formal answer consisting of general demurrer, general denial, and plea of not guilty. In paragraph eight, they plead that the trespass to try title suit came on for trial on December 8, 1937; that their attorney did not notify them of the setting, and that the case was tried to a jury; that their attorney abandoned their defense, instructing appellant's counsel to "go ahead and take judgment." That thereupon the case proceeded to trial, and, on an instructed verdict by the court, judgment was rendered against them in favor of appellants. In paragraph nine, they plead that the judgment against them "was not caused by any negligence on their part"; that they exercised all diligence to prevent the rendition of the judgment against them; that they had a good defense which they were prevented from making by the fraudulent acts of appellant, wholly unmixed with any fault or negligence on their part; that there is good cause to believe, and they do believe, that a different result would be obtained by a new trial. By paragraphs ten and eleven, they plead that prior to the institution of the trespass to try title suit, and prior to the foreclosure sale under the deed of trust, they had paid appellant in full the note for $1,340.75. That in addition to the specific payments on the note, appellees were entitled to a credit of $730 by virtue of an agreement between them and appellant, made during the month of November, 1927, and plead in detail the facts and circumstances upon which they predicated their claim for the $730. We quote from the bill:

"That at the time of execution of the $1340.75 note aforesaid and the deed of trust securing same, to-wit, June 9, 1932, plaintiffs were not indebted to defendant Early in any such amount, but that defendant Early demanded the execution of a note in such amount in renewal of the two prior notes above described, thereby rendering same usurious; that the execution of said note was procured through fraud on the part of the defendant Early, in that plaintiffs were ignorant negros, wholly inexperienced in real estate and commercial transactions, all of which was well known to defendant Early, who represented to them that he was accurately keeping record of plaintiff's payments and that the commissions above described had been applied in payment of the last $730.00 due and to become due upon their indebtedness, thereby procuring plaintiffs' execution of said $1,340.75 note.

"12. Plaintiffs say that at the time of the purchase of said property by plaintiffs defendant Early demanded of plaintiffs the sum of $100.00 in addition to the recited consideration for said purchase, as additional interest on the $700.00 second lien note for the first thirty (30) days, which plaintiffs then and there paid to defendant Early as additional interest and plaintiffs allege that said $100.00 so demanded, charged and collected tainted all three of the notes above described with usury."

By paragraph thirteen, they plead that appellant had collected $3 per month rent from an apartment on the property from December 12, 1936, to the date of the bill of review which was filed on February 21, 1939. By paragraph 14, they plead that appellant evicted them from the property which was their homestead in August, 1938, and claimed $1,000 because of the

eviction. We give paragraph 15 of the bill: "Plaintiffs say that defendant Early, after plaintiffs had been cited in the suit aforesaid and had promptly employed the attorney as aforesaid, he talked with said attorney and concealed from him the above matters of defense to said suit and on the contrary, denied same and that solely by reason of such fraudulent misrepresentations and concealments said attorney was induced to and did abandon the *d*f*ense of plaintiffs cause without the knowledge of or consent of plaintiffs and without any notice to them, and that the judgment aforesaid, while its form and language fail to reflect same was in fact a default judgment entered without the interposition of plaintiffs' defense or any part thereof that even after said judgment was entered, defendant Early fraudulently concealed the fact from plaintiffs until shortly before the time of their eviction and they were unaware of same until more than a year later, and after it was too late to file a motion for new trial in said cause and too late to procure a record therein, and too late to appeal same, whereby they were denied their day in Court."

In paragraph 16, appellees denied that they were bound by the acts and entry of the judgment in the entry of the judgment in the trespass to try title suit, and plead that the conduct of their attorney resulted from the fraudulent misrepresentations and concealment of facts by appellant. By paragraph 17, they plead "good cause" to believe that in the event of another trial a different result would follow. By paragraph 18, they plead a cloud on their title, resulting from the deeds of trust, and prayed that they be cancelled. The general prayer was that appellant be cited, and that upon a trial appellees recover judgment against appellant for title and possession of the property, for cancellation of the deeds of trust, for the damages plead, and for costs of suit and general relief.

■ The bill plead a good cause of action. On the facts plead, appellees' counsel did not have the right to withdraw from the case, instructing appellant to take judgment. On the facts plead, the acts and conduct of appellees' counsel in withdrawing from the case were occasioned by the fraudulent representations made to him by appellant, and on these fraudulent representations appellees' counsel was induced to abandon their cause of action. Having been employed to represent appellees and prosecute their defense, their counsel did not have authority to consent to a judgment against them. Pierce v. Foreign Mission Board of Southern Baptist Convention, Tex.Com.App., 235 S.W. 552. While the judgment in issue was in no sense a compromise, yet the law is that counsel can not even enter into a compromise judgment without the consent of his client. Anderson v. Oldham, 82 Tex. 228, 18 S.W. 557; Adams' Assignee v. Roller, 35 Tex. 711; Portis v. Ennis, 27 Tex. 574, 578; Wright v. Daily, 26 Tex. 730; Merritt v. Clow, 2 Tex. 582. On the allegations of the bill, the judgment against appellees resulted from appellant's fraud, and this fact authorized the filing of the bill. Martin v. Robinson, 67 Tex. 368, 3 S.W. 550, 557. See, also, Youngberg v. El Paso Brick Co:, Tex.Civ.App., 155 S.W. 715; Cetti v. Dunman, 26 Tex.Civ.App. 433, 64 S.W. 787. Hickey v. Stringer, 3 Tex.Civ.App. 45, 21 S.W. 716.

■ Second. On the issue of laches in filing the bill of review. Appellees were ignorant negroes, as stated above. We take the following statement from appellees' brief:

"The record shows the trespass to try title suit was filed June 15, A. D. 1937, and that Appellee employed an attorney to defend the suit, and that the attorney filed an answer timely and seasonably; that the cause came on for trial December 8, A. D. 1937, and judgment was taken without the interposition of any defense whatsoever on behalf of Appellee; that the attorney employed to defend the suit abandoned the defense of the same, without any notice to appellees. * * *

"The record further shows that following the entry of the judgment in the trespass to try title suit, these ignorant Negroes set about to employ a lawyer. Appellee Burns testified that it was several weeks before he got one.

"Appellee further testified that since he discovered the judgment and the foreclosure under the deed of trust sale, he has continuously tried, to the best of his ability, to get his property back.

"He testified that he got lawyers to clear his property up promptly. He testified in this connection as follows:

"Q. How long did you know of this suit prior to the filing of the suit—the first suit you filed through Lewis and Rea-

gan, how long before that was it you had this conversation with Early that you testified about when he told you he had a judgment? A. Several weeks, as near as I can remember, I couldn't find anybody, I was trying to find somebody to take it up and I had to go to free advisers at the City Hall and ask them to help me and they sent me to Mr. Lewis and it took some time."

He further testified:

"Q. When did you know you had been foreclosed? A. I called him and asked why he stopped getting his money, he didn't stop as usual, and he said that he foreclosed.

"Q. That is the first that you knew of it? A. Yes, sir.

"Q. How long after that was it you knew about the foreclosure before he told you that. A. He told me this over the telephone, I asked why he didn't stop and get his money as usual.

"Q. He didn't come for his money? A. That's right.

"Q. Did he tell you he was going to foreclose? A. No, sir.

"Q. Did you get notice of foreclosure sale or of what took place? A. No, sir, I called him and asked why he didn't stop Sunday as usual to get the money.

"Q. You are sure you didn't get a notice of foreclosure? A. Yes, sir.

"The testimony of Appellee further shows some confusion in his mind, under questioning, concerning the trustee's sale and the foreclosure judgment entered in the trespass to try title suit.

"We wish to call the court's attention to the fact that these Negroes, according to their testimony, promptly upon learning of the judgment, set about to find such legal help as they could get in an effort to save their property. That pursuant thereto, they being practically penniless at the time, as reflected by the record, even went to the City Hall in the City of Dallas and besought aid and advice from the free legal aid bureau; that several weeks after learning of the judgment they did procure counsel, and that on June 9, 1938, these attorneys filed a bill of review to set aside the judgment.

"We wish to call the court's attention to the fact that all these steps were taken by these negroes and all these efforts were expended by them and their bill of review

suit was actually filed before they had even been dispossessed."

The evidence raised the issue in appellees' favor of due diligence in filing and prosecuting their bill of review, which issue, under the agreement, was withdrawn from the jury and found by the court in appellees' favor. The authorities cited above in support of the sufficiency of the bill of review also support the sufficiency of the evidence to support the court's judgment on the bill of review.

Third. The sufficiency of the evidence to support the court's judgment cancelling the note. Appellee Burns testified that after making the initial payment of $100 in July, 1927, at the time of the delivery of the deed of trust that he paid appellant an additional $100; this $100 was paid for "extra interest" for the first 30 days of the note. The agreement with appellant was that when appellee paid the $100 extra interest for the first 30 days, appellant would start the note off at eight per cent. This payment made the contract usurious, and the law charged all payments thereafter made against the principal. Authorities are not necessary on this point. The evidence raised the issue that appellees paid appellant on the note more than $1,440, which, on the law of usury, was chargeable against the principal. On the testimony of appellees, appellant was due them $730 for commissions in making real estate sales for him, which he contracted and agreed with them to credit on the note for $1,000 of a date prior to the execution of the renewal note in 1932. In executing the note for $1,340.75, appellees testified that appellant agreed with them that they were entitled to a credit of $730 on the note for these commissions. We quote appellee's testimony on this point:

"A. Mr. Early told me my credit would go on that note.

"Q. What credit? A. The credit of the real estate I sold.

"Q. How much? A. 700 and some-odd dollars, 720 or $730.00, but he said he would have to keep his record straight, that I didn't owe $1,300.00, but he would have to draw it up that way to keep his record straight; that I didn't owe but a couple of hundred dollars at the time, and that by the time he credited my work I had done in selling the houses on the notes I didn't actually owe but a couple of hun-

dred dollars, but to keep his records straight he would have to draw the note up and that's why I signed it.

"Q. Did you rely on and believe Mr. Early's statement that he would credit that note with this $730.00 and interest? A. Yes, sir.

"Q. Was that what induced you to sign it?

"Q. Were you induced in signing it by your reliance upon what Mr. Early told you? A. I believed that he would keep the books right, he said he would, and he was keeping them right.

"Q. If he had disclosed to you that he intended to hold you for $1,340.75, would (you) have signed that note? A. No, sir."

All fact issues necessary to support the judgment of the court, in addition to the jury's verdict, were raised by the pleadings and the evidence, and, on the agreement, the court was authorized to make these findings as in fact they were made.

It follows that the judgment of the lower court should be in all things affirmed, and it is accordingly so ordered.

Affirmed.