**Fletcher Jesse JOHNSON, et al., Appellants,**

**v.**

**RANCHO GUADALUPE, INC., Appellee.**

**No. 9816.**

Court of Appeals of Texas, Texarkana.

March 6, 1990.

Rehearing Overruled April 10, 1990.

Rehearing Overruled May 22, 1990.

James P. Finstrom, Jefferson, for appellants.

Bailey C. Moseley, Moseley & Moseley, Marshall, for appellee.

GRANT, Justice.

Fletcher Jesse Johnson, Charles Johnson, Raymond Johnson, Lynwood Robert Johnson, Jessie Mae Walker, Lola Johnson Pullum, Frederick Henry, Isaac D. Johnson, Obie Lee Johnson, Zillary Johnson, Helen L. Palmer, James Monroe Johnson, Rayford Lewis Johnson, Gladys Johnson Jenkins, and Gloria Johnson Kennard (referred to collectively as the Johnsons) appeal from a judgment awarding Rancho Guadalupe, Inc. ownership in approximately ninety acres of land on the basis of adverse possession. The Johnsons claim ownership of an undivided interest in this tract of land.

The Johnsons contend that the trial court abused its discretion in refusing to order a new trial, that there is no evidence to support the judgment and that the proof does not fix the location or the boundaries of the actual possession by Rancho Guadalupe.

Rancho Guadalupe brought a trespass to try title suit against a large number of defendants, including the Johnsons, in an effort to obtain title to an approximate ninety-acre tract of land which lies within the boundaries of a much larger tract of land to which Rancho Guadalupe claims ownership. The Johnsons' attorney filed a plea of not guilty and further pled that a claim of adverse possession would not run against the Johnsons' interests as remaindermen because the life tenant was still alive. Rancho Guadalupe presented evidence in a brief trial before the court. Some of the defendants, other than the Johnsons, did not file answers, and an attorney ad litem appeared for those defendants who were served by publication and did not answer. Another attorney filed an answer and appeared on behalf of another group of defendants. Thus, evidence was required at the trial.

The appellants' brief contains a statement of the case which describes the judgment as being "an agreed judgment." The appellee does not dispute in its brief that the Johnsons' attorney entered into an agreed judgment, but rather the appellee cites cases involving settlement and contends that appellants' attorney had apparent authority to approve the judgment.* Rule 74(f) of the Texas Rules of Appellate Procedure states that "[a]ny statement made by appellant in his original brief as to the facts or the record may be accepted by the court as correct unless challenged by the opposing party."

At the oral argument, counsel for Rancho Guadalupe conceded that as to the parties on appeal, the judgment was an agreed judgment. Rancho Guadalupe agrees that the Johnsons' attorney had approved the proposed judgment as to form and substance prior to the trial. The record reflects that he did not appear at the trial. The trial judge signed the judgment presented to him by appellee's attorney. The judgment appears to be a compromise in that it awards title to all of the surface of the disputed tract to Rancho Guadalupe and awards the Johnsons an interest in the minerals under the tract, an award which is inconsistent with the evidence and the parties' position in their pleadings.

The Johnsons contend that the trial court abused its discretion in refusing to order a

---

* The main thrust of the dissent is that there was not an agreed judgment. This is not a point made on appeal either by brief or oral argument. In order to find something to support this position, the dissenter resorted to an argument offered by appellee's counsel in the trial court at a hearing on the motion for new trial.

new trial because their attorney was not authorized to enter into a settlement of the case. At the hearing on the motion for new trial, the Johnsons presented undisputed evidence that they had not authorized their attorney to settle or to enter into a compromise agreement and that he signed and approved the judgment without their knowledge. The testimony further shows that the attorney told one of the party witnesses that he had signed and approved the judgment on behalf of his clients.

The dissent relies on the case of *Lohse v. Cheatham*, 705 S.W.2d 721 (Tex.App.—San Antonio 1986, writ dism'd), for the proposition that the signatures of the parties and their attorney on the judgment evinces only the approval of the documents as reflecting the trial court's actions. The case is silent as to what language was used for the approval, but the court cites *State v. Reagan County Purchasing Co.*, 186 S.W.2d 128 (Tex.Civ.App.—El Paso 1944, writ ref'd w.o.m.). In the cited case, the court states that the signature of counsel indicating approval of the proposed *form* of the pronounced judgment does not show that counsel agrees to the judgment. If counsel in the present case had signed the judgment approving the *form* only, this would not evince that there was an agreed judgment. But there is a difference between form and substance, and we must recognize that the judgment in the present case was also approved as to substance. Furthermore, the cited language in the *Lohse* case was not part of the ratio decidendi because the ruling of the court dealt with whether there was ambiguity in the judgment.

■ An attorney is a special agent and is presumed to have authority to act for, and institute legal proceedings in behalf of any person whom he professes to represent. *Slattery v. Adams*, 279 S.W.2d 445 (Tex.Civ.App.—Beaumont 1954), *affirmed*, 156 Tex. 433, 295 S.W.2d 859 (1956). However, there is no implied authority for an attorney to release the very right in interest he has been employed to secure and protect. *Cetti v. Dunman*, 26 Tex.Civ. App. 433, 64 S.W. 787 (1901, writ ref'd).

By virtue of his employment, an attorney does not have an implied power to compromise an action which he has been engaged to defend. *Early v. Burns*, 142 S.W.2d 260 (Tex.Civ.App.—Beaumont 1940, writ ref'd). A compromise by an attorney without his client's knowledge or consent, which has the effect of depriving the client of his day in court, is an unauthorized act. *Pierce v. Terra Mar Consultants, Inc.*, 566 S.W.2d 49 (Tex.Civ.App.—Texarkana 1978, writ dism'd). Where a substantial right has been violated by the attorney's entering into an unauthorized compromise agreement, a judgment based thereon will be set aside. *McMillan v. McMillan*, 72 S.W.2d 611 (Tex.Civ.App.—Dallas 1934, no writ).

■ A motion for new trial is addressed to the discretion of the trial court and is not to be disturbed absent an abuse of discretion. *Strackbein v. Prewitt*, 671 S.W.2d 37 (Tex.1984). Because the undisputed evidence at the motion for new trial shows that the Johnsons' attorney entered into a compromise settlement without the consent of the Johnsons and without their knowledge, the trial court abused its discretion in not granting the Johnsons a new trial. Because our ruling on this point of error is dispositive of the case, we do not address the Johnsons' remaining point of error.

There were numerous defendants in this case who did not appeal. We reverse only that portion of the judgment which was granted against the appellants who are specifically enumerated in the first paragraph of this opinion, and we remand that portion to the trial court for a new trial.

BLEIL, Justice, dissenting.

The thrust of my disagreement with the majority is that the Johnsons had the burden on their motion for new trial hearing to prove that there was an agreed judgment or compromise settlement agreement entered into without their knowledge or authorization, and they failed to produce any evidence that the case was disposed of in either of those fashions. Having failed to persuade the trial court of the merits of their motion for new trial, and failing to

have conclusively established those merits, the Johnsons cannot successfully show an abuse of discretion on the part of the trial court. Therefore, we err in holding that the trial court abused its discretion.[1]

In determining an appeal, members of an appellate court should not disagree about such things as what evidence appears in the record or what statements were made by an attorney during oral argument. Unfortunately, it is precisely those things about which I differ with the majority and must record my dissent. Initially, I address that which the majority says is established by "undisputed evidence"; then I must discuss what the majority says counsel for Rancho Guadalupe conceded at oral argument before giving reasons why I would affirm the judgment.

*"Undisputed Evidence"*

The majority writes that "the undisputed evidence at the motion for new trial [hearing] shows that the Johnsons' attorney entered into a compromise settlement...." (majority opinion p. 598). In actuality, *no* evidence shows that there was any compromise settlement. No evidence of any compromise settlement is cited by the majority because none exists.[2]

1. The majority erroneously characterizes my position as being that there was not an agreed judgment. I take no position on this fact question. I merely spotlight the Johnsons' failure to go forward with their burden of proof that the case was disposed of in that fashion. As far as the absence of a point on appeal concerning whether there was a settlement or compromise, I believe the Johnsons' point of error number one covers that. It provides that: "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO GRANT APPELLANTS' MOTION FOR NEW TRIAL AFTER IT BECAME APPARENT THAT APPELLANT'S (sic) TRIAL COUNSEL HAD COMPROMISED THEIR CLAIMS WITHOUT AUTHORIZATION FROM APPELLANTS." Rancho Guadalupe, being the appellee in this Court, asserts no point of error.

2. Only two witnesses testified at the hearing on motion for new trial. While there is no evidence that a compromise settlement agreement was entered into, in fairness I quote what might conceivably be considered as testimony relevant to this issue. Examination of Isaac D. Johnson, of Los Angeles, California, proceeded as follows:

Q There was a trial set in this case on June 28th, I believe, 1989, and a Judgment was entered on June 28th, 1989. Did Mr. McLain ever advise you of that trial setting?
A No, sir.
Q Did Mr. McLain ever discuss with you that Judgment that was entered June 28th, before June 28th?
A Not before.
Q Did you authorize Mr. McLain to act in your behalf in entering a Judgment that affected your rights in this lawsuit?
A No, sir.
Q Did you authorize any person to enter a Judgment that affected your rights in this lawsuit?
A No, sir.
Q Did you have any notice whatsoever that this matter would be heard or that a Judgment would be presented or the contents of that Judgment?
A No, sir.

Q When did you first learn that a Judgment had been entered dated June 28, 1989?
A July 4th, sir.
Q And how did you learn that?
A I called to wish my brother a happy birthday, and to find out what was happening in the case.
Q And he brought it to your attention?
A That there had been a Court date set and a Judgment entered. After questioning him, I found out that a Judgment had been entered.
Q Now, in July a Nunc Pro Tunc Judgment was entered and I explained to you that's a corrected Judgment, it means now for then and back. That Judgment was entered July 15th, 1989. Did you consent to that Judgment?
A Yes, sir. No, not to the Judgment.
Q Okay. That's what I'm asking. That Amended Judgment, did you know that was going to be entered?
A He told me there was some information left out that had to be included in the Judgment.
Q At this time, did you contact Mr. McLain to find out what was going on?
A Yes, I did, sir.
Q And what did Mr. McLain tell you?
A Mr. McLain told me that there had been a Judgment entered and that we had fifteen days from that time if we disagreed to try and have it set aside. However, that he would not do any such thing as that, and he would not further his obligation in this case; he was quitting.
Q Did Mr. McLain tell you that he had in fact signed and approved that Judgment in your behalf?
A He told me that he had.
Q Was that—had you authorized him or known anything about it?
A No, sir. I told him he had absolutely no authority to do any such thing.
Q Had you ever received any letters or correspondence of any nature from Mr. McLain?
A None prior to the Judgment.
Q And did Mr. McLain then file a Motion for New Trial in your behalf?

There are, however, three good indications of record that this cause was not resolved by compromise settlement or by agreed judgment. These are:

### 1. Rancho Guadalupe's attorney's statement

At the conclusion of the evidence on the motion for new trial hearing, Bailey Moseley spoke to set the record straight. Moseley said this:

We would like to point out that this is not, even though it's an approved Judgment, it's not an agreed Judgment, that the record will reflect that at the time that the hearing was had, that the records—evidence was placed before the Court, the Court made a ruling based upon those, and in this particular circumstance, it was one in which the form had been approved by the parties ahead of time, and that there is sufficient evidence upon which to base a Judgment and to sustain the same.

### 2. The trial judge's statement

At the conclusion of the trial on the merits, the judge specifically indicated upon what the judgment would be based. The court announced from the bench that:

All right. Fine. Then, I will go ahead and, based upon the evidence and based upon the exhibits that have been tendered, I will grant Judgment to the Plaintiff as requested.

A Yes, he did after some conversation.
Q And did he tell you whether or not he would appear to argue that Motion for New Trial in your behalf?
A He said that he would not.
Then Fletcher J. Johnson, of Denver, Colorado, appeared, and after saying that what Isaac Johnson, his brother, testified to was true, was questioned as follows:
Q Did Mr. McLain ever tell you the case was set for trial?
A No, sir.
Q Did he ever tell you that a proposed Judgment or settlement agreement—?
A No, sir.
Q —was being discussed?
A No, sir.
Q Did you ever give him authority of any kind to settle or enter into any agreement in this case?

### 3. The judgment

The judgment nowhere indicates that any settlement agreement existed. Rather, the judgment recites that:

All parties announced ready; no jury having been demanded, this cause came on for hearing before the Court as to both the law and the facts.

Apparently, the trial court based its judgment on the facts before it. There certainly was *no* evidence offered at the hearing on motion for new trial or *any* indication in the record that the case was decided based upon a settlement agreement. I now turn to what the majority says was conceded at oral argument.

### Oral Argument "Concession"

Perhaps aware of the error of its holding that the "undisputed evidence" shows that the case was resolved by compromise settlement agreement, the majority fortifies the holding by the announcement that at the oral argument, counsel for Rancho Guadalupe "conceded" that the judgment was an agreed judgment. I quite honestly recall no such concession. I here voice my disagreement with the majority's use of this "concession" as a basis for its decision. There is no record of the oral arguments, and as Justice Grant has recently noted, oral representations are subject to the fallibility of human recollection. Going further, in an unpublished opinion he quoted the Latin maxim *Vox emissa volati litera scripta manet.* This translates in English

A No, sir.
Q Did you ever receive any correspondence from him or anybody else that a settlement was going to be discussed?
A No, sir.
Q You're here today; I take it you would have appeared that day if you'd known it was going to be set for trial?
A Yes, sir.
Q Did you personally talk to Mr. McLain anytime before June 28th, 1989?
A No, sir.
On cross-examination, Isaac Johnson testified that he had not seen the land or known of its use since their mother deeded the land away in 1951. Fletcher Johnson had never seen the land.

to, "The spoken word flies; the written word remains." Also fitting might be what Professor Corbin said, although relating to why agreements should be written. Corbin observed that "human memory is less reliable than are written records, especially when it is influenced by disappointment in results." 3 A. Corbin, *Corbin on Contracts* § 607, at 660 (1960). By making its decision one which hinges on the attorney's oral "concession," the majority gives fair warning to all who come before us: beware, regardless of the evidence or the legal issues, our memory of your oral argument may determine the outcome of your case.[3]

*Proper Resolution of Issues*

What I have said goes primarily to my disagreement with the majority's treatment of key aspects of this appeal. I now turn to what I consider to be a proper resolution of the issues on appeal. The Johnsons claim three errors on appeal: (1) that the trial court abused its discretion in failing to grant a motion for new trial; (2) that no evidence supports a finding of title in Rancho Guadalupe by deed or limitations; and (3) that the proof does not fix the boundaries to support the judgment based upon adverse possession.

The first of these points is the only one treated by the majority. I find no abuse of discretion on the part of the trial court. The trial of this case, as well as the motion for new trial, were heard by the trial court. Because no findings of fact were requested or filed, we must uphold the trial court's decision if it can be upheld on any legal theory supported by the evidence. *Seaman v. Seaman*, 425 S.W.2d 339, 341 (Tex. 1968). And the presumption that the court found all controverted facts in support of its judgment applies to motions for new trial. *Brawley v. Bowen*, 387 S.W.2d 383, 384 (Tex.1965).

Thus, we must presume that the trial court found against the movants in all respects on the motion for new trial. We must presume that the trial court failed to find that this case was disposed of by agreement of the parties.

And when, as here, the factfinder fails or refuses to find from a preponderance of the evidence that a fact exists which one party has the burden to prove, this means that the party did not discharge its burden of proof. *C. & R. Transport, Inc. v. Campbell*, 406 S.W.2d 191 (Tex.1966). The failure to find an issue need not have evidentiary support. A complaint of the factfinder's failure to find a fact can be made in two instances: first, when the failure to find a fact goes against facts established as a matter of law, *Siderius, Inc. v. Wallace Co.*, 583 S.W.2d 852 (Tex.Civ.App.—Tyler 1979, no writ); second, when the failure to find a fact is so against the great weight and preponderance of the evidence as to be wrong and unjust, *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646 (Tex.1988). In determining a great weight point, we must consider all the evidence and remand if the fact findings are so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

The trial court's failure to find that this case was disposed of on an agreed basis, or by a compromise settlement agreement, cannot properly be set aside on appeal. The Johnsons did not establish this proposition as a matter of law; nor was the trial court's failure to find that the case was disposed of by settlement agreement so against the great weight and preponderance of the evidence as to be wrong and unjust. The Johnsons did not discharge their burden of proof. Because the trial court's judgment on this legal theory finds support in the evidence, we must affirm. *See Lassiter v. Bliss*, 559 S.W.2d 353 (Tex. 1977).

---

**3.** If the majority's memory of the attorney's orally stated position be correct, then I invite Mr. Moseley to address this question on motion for rehearing. If I be wrong, then I will gladly adopt the majority's viewpoint that Moseley conceded this pivotal question. Nevertheless, whether my recollection is accurate or inaccurate in this instance is of little moment. I believe it a poor appellate judicial process which relies upon appellate judges' memory of the precise wording used by a lawyer during the course of oral argument.

The Johnsons suggest that the fact that their attorney approved the judgment as to form and content establishes that this was an "agreed judgment" or a "consent judgment" in the nature of a compromise settlement agreement. The law does not support that position. In *Lohse v. Cheatham*, 705 S.W.2d 721 (Tex.App.—San Antonio 1986, writ dism'd), the appellant sought a declaratory judgment as to the rights of the parties pursuant to a divorce decree. The decree contained the signatures of the parties and their respective attorneys, and the appellee asserted that the decree should be treated as a contract between the parties. The court noted that the decree did not recite that it disposed of any property pursuant to an agreement of the parties and that the signatures of the parties and their attorneys on the decree evidenced approval of the document as reflecting the trial court's action. Specifically, the court said:

> In plain and unequivocal language the decree recites that the Court is Ordering, Decreeing and Adjudging certain dispositions based upon the evidence before it, considering the justness and rightness and having due regard for the rights of the parties and their children. Nowhere in the decree does it recite that the Court is making any disposition according to an agreement of the parties. The document contains the signatures of the parties and their attorneys evidencing their approval of the document as reflecting the trial court's actions.

*Lohse v. Cheatham*, 705 S.W.2d at 725–26. The court concluded that the decree was not an agreed or consent judgment. A similar conclusion should be reached based upon the language in the judgment now before us. *See also State v. Reagan County Purchasing Co.*, 186 S.W.2d 128 (Tex.Civ.App.—El Paso 1944, writ ref'd w.o.m.), wherein the court recognized that generally the signature of a party's attorney means merely that the draft proposed truly evidences the judgment rendered by the court, and not that the judgment is agreed. *Id.*, at 136.

Under these circumstances, we must decide whether the trial court abused its discretion. Clearly, it did not abuse its discretion.

Having found no abuse of discretion, I would move to the other two points of error raised by the Johnsons. There is evidence to support the judgment, and the evidence adequately fixes the boundaries of the disputed tract. I would overrule the points of error and affirm. Because the majority does not, I respectfully dissent.

### ON MOTION FOR REHEARING

On rehearing, Rancho Guadalupe urges that since no request for findings of fact or conclusions of law was made, then this Court erred in concluding that there was an agreed judgment. The dissenting opinion pointed out, when no findings of fact are requested, we must uphold the trial court's decision if it can be upheld on any legal theory supported by the evidence. *Seaman v. Seaman*, 425 S.W.2d 339, 341 (Tex.1968). The dissenting opinion cites the case of *Brawley v. Bowen*, 387 S.W.2d 383 (Tex.1965), to show that findings of fact and conclusions of law are proper for hearings on motions for new trial. The *Brawley* case was written in 1965. At that time, the language of Rule 296 required the filing of a request for findings of fact and conclusions of law to be made within ten days from the rendition of final judgment *or order* overruling the motion for new trial. Subsequently, the language of Rule 296 of the Rules of Civil Procedure was amended, and the present rule makes no reference to an order overruling a motion for new trial. Under the present rule, a request for findings of fact and conclusions of law must be made within ten days after the final judgment is signed. This will likely exclude the opportunity to make such a request after a hearing on the motion for a new trial because the hearing on the motion would probably be conducted after the time has expired for filing such a request.

■ Even if findings of fact and conclusions of law were allowed for a hearing on the motion for new trial, the basic rule creating presumptions in the absence of

findings of fact and conclusions of law applies only to controverted facts. As the Court stated in *Brawley*, there is a presumption that the trial court found all controverted facts in support of its judgment. The only evidence presented at the hearing on the motion for new trial was offered by the Johnsons. The uncontroverted evidence shows that the Johnsons' attorney approved the judgment without the consent or knowledge of the Johnsons.

It is a thing of wonder that the dissenter can cite the evidence in his opinion and yet at the same time challenge its existence. In the original opinion, our statement related to undisputed evidence was as follows: "At the hearing on the motion for new trial, the Johnsons presented undisputed evidence (1) that they had not authorized their attorney to settle or to enter into a compromise agreement and (2) that he signed and approved the judgment (3) without their knowledge."

The uncontroverted evidence supporting each statement is as follows:

(1) "that they had not authorized their attorney to settle or to enter into a compromise agreement...."

Testimony of Fletcher J. Johnson:

Q  Did you ever give him authority of any kind to settle or enter into any agreement?

A  No, sir.

Testimony of Issac D. Johnson:

Q  Did you authorize Mr. McLain [the Johnsons' attorney] to act in your behalf in entering a Judgment that affected your rights in this lawsuit?

A  No, sir.

(2) "that he [the Johnsons' attorney] signed and approved the judgment...."

Testimony of Issac D. Johnson:

Q  Did Mr. McLain tell you that he had in fact signed and approved that Judgment in your behalf?

A  He told me that he had.

Q  Was that—had you authorized him or known anything about it?

A  No, sir. I told him he had absolutely no authority to do any such thing.

(3) "without their knowledge."

Testimony of Issac D. Johnson:

Q  Did you have any notice whatsoever that this matter would be heard or that a Judgment would be presented or the contents of that Judgment?

A  No, sir.

Testimony from Fletcher J. Johnson:

Q  Did he ever tell you that a proposed Judgment or settlement agreement—

A  No, sir.

Q  —was being discussed?

A  No, sir.

. . . .

Q  Did you ever receive any correspondence from him or anybody else that a settlement was going to be discussed?

A  No, sir.

This evidence is undisputed. There is *no* evidence to the contrary.

Rancho Guadalupe urges in its motion for rehearing that the judgment was merely approved and that this was not tantamount to being an agreed judgment. An agreed judgment means essentially the same thing as a judgment by consent. A judgment by consent is a judgment in which the terms are settled and agreed to by the parties and which is entered of record by authorization of the court. *Matthews v. Looney*, 132 Tex. 313, 123 S.W.2d 871 (Tex.Comm'n App.1939, opinion adopted).

■  Civil litigation is by its nature an adversary proceeding. When an attorney in such a proceeding approves such a judgment prior to the trial "as to form and substance" and does not show up for the trial, an inference is created that the judgment as to his clients and the opposing party is an agreed or consent judgment. The record shows that that is what occurred in this case. There would not be such an inference if the judgment had been signed after the trial and had been approved as to form only.

The motion for rehearing is overruled.

BLEIL, Justice, dissenting.

I cannot join in the majority's opinion on motion for rehearing.[1] The majority characterizes the effect of certain evidence. Originally, it labeled the evidence "undisputed"; now the evidence is "uncontroverted." True, Rancho Guadalupe chose not to present evidence at the hearing on motion for new trial. Because there was no evidence or indication that the case was resolved on the basis of an unauthorized compromise settlement agreement, and because the Johnsons presented no evidence otherwise showing their entitlement to a new trial, Rancho Guadalupe may well have seen no need to present evidence. I enter my dissent to the majority's opinion on motion for rehearing.[2]

---

1. I also decline to join in the dicta expressed by the majority concerning the inapplicability of our usual standards of review concerning the facts found by the trial court. The majority's view appears to be that a trial judge has no fact finding authority following a hearing on motion for new trial.

2. In my original dissenting opinion, I invited Rancho Guadalupe's attorney—the only attorney still in the case who was involved in the trial proceedings—to address the question of any concession by him that there was an agreed judgment *if* the majority's memory be correct. On motion for rehearing he asserts, as he did at trial, that the judgment was not an "agreed judgment" or "consent decree" but rather was an "approved decree." In his motion for rehearing, Mr. Moseley clarifies what he means by "approved decree." He asserts that it means "that the counsel for the defense was accorded the courtesy of seeing a decree and approving it prior to the time of trial, but with the judgment being based upon the evidence as it was produced at the time of trial."