COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

 

NO. 02-11-00170-CV 

 

 


 
 
 Lainie Whitmire and Ray Whitmire
 
 
  
 
 
 APPELLANTS
 AND APPELLEES
 
 
 
 
  
 V.
  
 
 
 
 
 National Cutting Horse Association
 
 
  
 
 
 APPELLEE
 AND APPELLANT
 
 


 

 

----------

 

FROM THE 236th
District Court OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

          

I. Introduction

          In
four issues, Appellants Lainie Whitmire and Ray Whitmire argue that the trial
court erred by granting judgment notwithstanding the verdict (JNOV) on Lainie’s
breach of oral agreement and false imprisonment claims, by awarding Appellee
National Cutting Horse Association (the NCHA) attorney’s fees on Lainie’s and
Ray’s declaratory judgment actions, and by not awarding Lainie attorney’s fees
on her breach of contract claim.  The NCHA also brings a conditional
cross-appeal, arguing that the trial court abused its discretion by admitting
and excluding certain evidence regarding Lainie’s breach of oral agreement
claim.  We reverse and render in part and affirm as modified in part.

II.  Factual and Procedural Background

A. 
The Underlying Facts

          Lainie
was a member of the NCHA and competed in the amateur and non-professional classes. 
In 2004, the NCHA informed her that it had concerns regarding her
qualifications to compete in those classes and requested detailed information regarding
her past employment.  Later that year, the NCHA informed Lainie that a hearing
would be held in front of the NCHA’s grievance committee on November 15, 2004,
regarding her qualifications.

Lainie
and her attorney, Clark Brewster, appeared at the hearing; the NCHA’s attorney,
E. Eldridge Goins, Jr., appeared on behalf of the NCHA.  At the conclusion of
the hearing, the committee decided to revoke Lainie=s
amateur status and also to suspend her non-professional status unless she produced
evidence to show her eligibility for non-professional status.

Lainie
appealed the grievance committee=s
ruling; on the day of the appeals hearing, Brewster, on behalf of Lainie, and Goins,
on behalf of the NCHA, reached an oral settlement agreement.  Both parties
agree that they reached a settlement agreement and that, as part of the
agreement, Lainie would withdraw all appeals and her membership would be
suspended for six months.  The parties dispute whether reinstatement of Lainie=s
non-professional status at the conclusion of the six-month suspension was a
term of the settlement agreement.  

On January
19, 2005, Goins sent Brewster a letter, purportedly confirming the terms of the
settlement agreement.  The letter stated that the parties agreed that A[a]ll
pending investigations and appeals [were thereby] ceased,@
that Lainie=s NCHA membership would be suspended for
six months, and that Lainie=s amateur and non-professional
statuses would be revoked.  The letter did not mention reinstatement of Lainie=s
non-professional status.  The letter did not provide a signature line for
Brewster or Lainie, and they did not otherwise respond in writing. 

Lainie
and Brewster testified at trial that, during a telephone call from Brewster to
Goins after Brewster received the letter, Goins assured Brewster that, although
not stated in the letter, Lainie’s non-professional status would be reinstated at
the conclusion of her six-month membership suspension.

After
the six-month membership suspension period ended, Lainie’s membership was
reinstated, and she resumed participation at NCHA events in the open class.  Lainie
applied for reinstatement of her non-professional status in October 2005; in
her application, she stated that her amateur status had been suspended and
revoked and that her non-professional status had been suspended in November
2004.  The NCHA denied her application due to ineligibility.  In a letter dated
March 2, 2006, Lainie=s new attorney, James
Walker, requested reconsideration of Lainie=s
application for non-professional status and an appeal to the NCHA executive
committee in the event that her application was denied a second time.  The
letter did not mention any oral agreement for automatic reinstatement of her
non-professional status.

The
application was denied, and on August 21, 2006, the NCHA held a hearing to
consider Lainie’s appeal.  Lainie appeared with her attorney, Walker.  After
the hearing, the executive committee denied Lainie=s
application for non-professional status and suspended her NCHA membership for
one year. 

B. 
The Underlying Procedural Posture

In
October 2006, Lainie filed suit against the NCHA asserting claims for, among
other things, declaratory judgment, breach of the oral settlement agreement,
false imprisonment, and intentional infliction of emotional distress;[2] she also sought
attorney’s fees under chapter 37 of the Texas Civil Practice and Remedies Code[3]
for her declaratory judgment claim and under chapter 38[4]
for her breach of contract claim.  Ray joined the suit as a plaintiff after the
NCHA terminated his membership; he brought claims against the NCHA for
declaratory judgment, violations of his right to due process, and breach of
fiduciary duty.  The NCHA filed a counterclaim for declaratory judgment; it
also requested attorney’s fees under chapter 38 of the Texas Civil Practice and
Remedies Code and pursuant to the NCHA’s rules.    

The
trial court granted summary judgment in favor of the NCHA on all of Lainie=s
claims except false imprisonment and intentional infliction of emotional
distress.  The trial court severed Lainie’s two remaining claims, all of Ray’s
claims, and the NCHA’s counterclaim.

Lainie
appealed the summary judgment in favor of the NCHA to this court.  See
Whitmire v. Nat’l Cutting Horse Ass’n, No. 02-08-00176-CV, 2009 WL 2196126
(Tex. App.—Fort Worth 2009, pet. denied) (mem. op.).  We upheld the trial court’s
summary judgment in favor of the NCHA on all of Lainie’s claims—including her
declaratory judgment action—except her claim for breach of the oral settlement
agreement, and we remanded that claim to the trial court.  See id. at
*11.  On remand, the trial court consolidated Lainie’s breach of oral contract
claim with the previously-severed and abated claims.  The trial court then granted
summary judgment for the NCHA on Ray’s claims.[5]  The trial court also
granted summary judgment for the Whitmires on the NCHA’s counterclaim for
declaratory judgment and attorney’s fees. 

The
NCHA and Lainie then entered into a written agreement that “all attorneys’ fees
issues [would] be submitted post-verdict” to the trial court.

Lainie’s
claims for breach of oral contract and false imprisonment proceeded to trial.[6]  After a two-week
trial, the jury returned a verdict in favor of Lainie on both of her claims.  The
jury specifically found that the NCHA and Lainie had an agreement to reinstate
her non-professional status at the end of her six-month membership suspension
and that the NCHA failed to comply with that agreement; the jury awarded Lainie
$70,000 in damages.  The jury also found that the NCHA had falsely imprisoned
Lainie and awarded zero dollars in damages for that claim. 

Lainie
requested that the trial court enter judgment in accordance with the jury’s
verdict and also requested attorney’s fees for prevailing on her breach of
contract claim; she submitted Walker’s affidavit as evidence of her attorney’s
fees.  The NCHA filed a motion for JNOV and alternative motion for new trial on
Lainie’s breach of contract claim.  It requested that the trial court disregard
the jury’s findings on jury questions 1–4 (the breach of oral agreement and
false imprisonment questions) and enter a take-nothing judgment on all of the
Whitmires’ claims; the NCHA also requested attorney’s fees, attaching as
evidence its attorneys’ affidavits.  The NCHA alternatively moved for a new
trial based on the evidentiary issues that form the basis of its cross-appeal. 


The
trial court granted the NCHA’s motion for JNOV, signing a final judgment that
Lainie take nothing on her breach of oral agreement and false imprisonment
claims and awarding her no attorney’s fees.  The final judgment also ordered
that the NCHA recover $302,000 in attorney’s fees from Lainie for defending her
declaratory judgment claim and recover $45,000 in attorney’s fees from Ray for
defending his declaratory judgment claim.  The Whitmires timely filed notice of
appeal, and the NCHA timely filed notice of cross-appeal.

III.  JNOV on Breach of Oral Agreement

          In
part of her first issue, Lainie argues that the trial court erred by
disregarding the jury’s verdict on her breach of oral agreement claim and by granting
JNOV for the NCHA because she presented substantial evidence to support the
jury’s findings that she and the NCHA had an agreement to reinstate her
non-professional status at the end of her six-month membership suspension and
that she suffered $70,000 in damages as a result of the NCHA’s breach.

A. 
Standard of Review

A
trial court may disregard a jury verdict and render JNOV if no evidence supports
the jury findings on issues necessary to liability or if a directed verdict
would have been proper.  See Tex. R. Civ. P. 301; Tiller v. McLure,
121 S.W.3d 709, 713 (Tex. 2003); Fort Bend Cnty. Drainage Dist. v. Sbrusch,
818 S.W.2d 392, 394 (Tex. 1991).  A directed verdict is proper only under
limited circumstances: (1) when the evidence conclusively establishes the right
of the movant to judgment or negates the right of the opponent; or (2) when the
evidence is insufficient to raise a material fact issue.  Prudential Ins.
Co. of Am. v. Fin. Review Servs., Inc., 29 S.W.3d 74, 77 (Tex. 2000); Playoff
Corp. v. Blackwell, 300 S.W.3d 451, 454 (Tex. App.—Fort Worth 2009, pet.
denied) (op. on reh’g). 

          To
determine whether the trial court erred by rendering a JNOV, we view the
evidence in the light most favorable to the verdict under the well-settled
standards that govern legal sufficiency review.  See Ingram v. Deere,
288 S.W.3d 886, 893 (Tex. 2009); Wal-Mart Stores, Inc. v. Miller, 102
S.W.3d 706, 709 (Tex. 2003).  We must credit evidence favoring the jury verdict
if reasonable jurors could and disregard contrary evidence unless reasonable
jurors could not.  See Tanner v. Nationwide Mut. Fire Ins. Co., 289
S.W.3d 828, 830 (Tex. 2009); Cent. Ready Mix Concrete Co. v. Islas, 228
S.W.3d 649, 651 (Tex. 2007).

B.  Sufficient
Evidence to Support Jury’s Breach of Contract Finding

Jury
Question No. 1 asked, “Was there an agreement between the [NCHA] and Lainie
Whitmire to reinstate her non-professional status at the end of her six (6)
month suspension?”  The question also set forth the applicable law as follows:

You are instructed
that in deciding whether the parties reached an agreement, you may consider
what they said and did in light of the surrounding circumstances, including any
earlier course of dealing.  You may not consider the parties’ unexpressed
thoughts or intentions.

 

You are instructed
that a party’s conduct includes the conduct of another who acts with the party’s
authority or apparent authority. 

 

You are instructed
that authority for another to act for a party must arise from the party’s
agreement that the other act on behalf and for the benefit of the party.  If a
party so authorizes another to perform an act, that such other party is also
authorized to do whatever else is proper, usual, and necessary to perform the
act expressly authorized.  

          

You are instructed
that apparent authority exists if a party (1) knowingly permits another to hold
himself out as having authority or (2) through lack of ordinary care, bestows
on another such indications of authority that lead a reasonably prudent person
to rely on the apparent existence of authority to his detriment.  Only the acts
of the party sought to be charged with responsibility for the conduct of
another may be considered in determining whether apparent authority exists.

 

You are instructed
that a party’s conduct includes conduct of others that the party has ratified. 
Ratification may be express or implied.

 

You are instructed
that implied ratification occurs if a party, though he may have been unaware of
unauthorized conduct taken on his behalf at the time it occurred, retains the
benefits of the transaction involving the unauthorized conduct after he
acquired full knowledge of the unauthorized conduct.  Implied ratification
results in the ratification of the entire transaction.  

The
jury answered “yes” to this question.

In
its motion for JNOV, the NCHA argued that evidence at trial established that
the only settlement terms approved by the NCHA were those contained in the
January 19, 2005 letter that Goins sent to Brewster; that the NCHA executive
committee did nothing to cause Lainie to reasonably believe that Goins had any
authority to enter into an agreement other than upon those terms approved by
the executive committee in Goins’s letter; that the executive committee did not
accept or ratify any other settlement terms; and that Lainie and her attorneys
never mentioned the agreement to reinstate her non-professional status until
she filed suit over a year after her membership suspension ended. The NCHA does
not dispute that Goins had actual authority to enter into settlement agreements
on its behalf upon terms approved by the NCHA executive committee, and the NCHA
does not dispute that Goins did in fact, on its behalf, enter into a settlement
agreement with Lainie. 

Thus,
we will first determine whether, viewing the evidence in the light most
favorable to the jury’s verdict under the well-settled standards that govern
legal sufficiency review, crediting evidence favoring the jury verdict if
reasonable jurors could and disregarding contrary evidence unless reasonable
jurors could not, any evidence exists that Goins had the authority, actual or
apparent, to bind the NCHA to the terms of settlement as testified to by Lainie
and Brewster—which included reinstatement of Lainie’s non-professional status
after her six-month membership suspension ended.[7]  See Tex. R. Civ.
P. 301; Tiller, 121 S.W.3d at 713; Fort Bend Cnty. Drainage Dist.,
818 S.W.2d at 394; see also Prudential Ins. Co. of Am., 29 S.W.3d
at 77; Playoff Corp., 300 S.W.3d at 454.

          Generally,
a principal will be liable for the acts of its agent only if the acts are
within the agent=s authority or if the
principal ratifies the acts.  See Elliot Valve Repair Co. v. B.J. Valve
& Fitting Co., 675 S.W.2d 555, 560–61 (Tex. App.—Houston [1st Dist.]),
rev=d on other grounds,
679 S.W.2d 1 (Tex. 1984).  If an agent acts within the scope of his authority,
both the agent and the principal may be liable.  Wynne v. Adcock Pipe &
Supply, 761 S.W.2d 67, 69 (Tex. App.—San Antonio 1988, writ denied).  An
agent may have actual or apparent authority to act on behalf of a principal;
the agent’s authority depends on some communication by the principal either to
the agent (actual or express authority) or to the third party (apparent or
implied authority). Gaines v. Kelly, 235 S.W.3d 179, 182 (Tex. 2007). 

Actual
authority usually denotes the authority a principal (1) intentionally confers
upon an agent, (2) intentionally allows the agent to believe he possesses, or
(3) by want of due care allows the agent to believe he possesses. 2616 S.
Loop L.L.C. v. Health Source Home Care, Inc., 201 S.W.3d 349, 356–57 (Tex. App.—Houston
[14th Dist.] 2006, no pet.); Currey v. Lone Star Steel Co., 676 S.W.2d
205, 209–10 (Tex. App.—Fort Worth 1984, no writ).  Actual authority may be
express or implied.  2616 S. Loop L.L.C., 201 S.W.3d at 356–57.  An
attorney retained for litigation is presumed to possess actual authority to
enter into a settlement on behalf of a client.  City of Roanoke v. Town of
Westlake, 111 S.W.3d 617, 628 (Tex. App.—Fort Worth 2003, pet. denied). 
This presumption of actual authority may be rebutted by affirmative proof that
the client did not authorize his attorney to enter into the settlement.  Walden
v. Sanger, 250 S.W.2d 312, 316 (Tex. Civ. App.—Austin 1952, no writ); see
Johnson v. Rancho Guadalupe, Inc., 789 S.W.2d 596, 598 (Tex. App.—Texarkana
1990, writ denied); Fail v. Lee, 535 S.W.2d 203, 207–08 (Tex. Civ.
App.—Fort Worth 1976, no writ).

Apparent
authority is based on estoppel.  Gaines, 235 S.W.3d at 182.  In Gaines,
the Texas Supreme Court explained that apparent authority 

aris[es] ‘either from
a principal knowingly permitting an agent to hold [himself] out as having
authority or by a principal’s actions which lack such ordinary care as to
clothe an agent with the indicia of authority, thus leading a reasonably
prudent person to believe that the agent has the authority [he] purports to
exercise.’

Id. (quoting
Baptist Mem’l Hosp. Sys. v. Sampson, 969 S.W.2d 945, 948 (Tex. 1998)).  Only
the conduct of the principal is relevant.  Id. (quoting NationsBank,
N.A. v. Dilling, 922 S.W.2d 950, 953 (Tex. 1996)).  We examine the conduct
of the principal and the reasonableness of the third party’s assumptions about
authority.  Id. at 182–83.

          In
this case, Brewster and Lainie both testified that the NCHA held out Goins as
its attorney with authority to settle the dispute between them and that neither
Brewster nor Lainie knew of any limitations to Goins’s authority to settle.  The
executive director of the NCHA, Charles Jeffrey Hooper, testified that Goins represented
the NCHA throughout its dispute with the Whitmires and that Goins appeared at
hearings as the NCHA’s attorney.  Although the NCHA also presented evidence
that it had only authorized Goins to settle the dispute with Lainie upon the
express terms it had agreed to, that evidence does not defeat the evidence that
the NCHA held Goins out as having unqualified, unlimited authority to negotiate
a settlement with Lainie on its behalf.  See Thomas Reg’l Directory Co.,
Inc. v. Dragon Products, Ltd., 196 S.W.3d 424, 428 (Tex. App.—Beaumont
2006, pet. denied) (“To require a relying party to prove it ascertained the
fact and scope of authority would require proof of actual authority, not
apparent authority.  Apparent authority is based on estoppel, and is intended ‘to
prevent injustice and protect those who have been misled.’”) (quoting Baptist
Mem’l Hosp. Sys., 969 S.W.2d at 948 n.2, 949); cf. Douglass v. Panama,
Inc., 504 S.W.2d 776, 779 (Tex. 1974) (stating that “apparent authority is
not available where the other contracting party has notice of the limitations
of the agent’s power”).  No evidence exists that Lainie and Brewster had notice
of any limitations on Goins’s authority or power to settle the dispute between
Lainie and the NCHA.   

We
hold that more than a scintilla of evidence supports the jury’s finding that
the NCHA and Lainie had an agreement—entered into by Goins acting with apparent
authority of the NCHA—to reinstate her non-professional status at the end of
her six-month membership suspension.  See Tex. R. Civ. P. 301; Tiller,
121 S.W.3d at 713; Fort Bend Cnty. Drainage Dist., 818 S.W.2d at 394.  

C. 
Sufficient Evidence to Support Damages Finding

          Lainie
also argues in her first issue that she presented sufficient evidence to
support the jury’s finding that the NCHA’s breach of the oral settlement
agreement caused her to suffer $70,000 in damages.  As evidence of her damages,
Lainie presented evidence that the value of three of her horses—Can Yall CD
Freckles, Dual Hickory Nita, and Hickory Kit Rio—diminished in value because she
could not compete and earn prize money on them at NCHA shows. Lainie’s expert
witness, David Johnson, testified that the total value of all three horses
diminished by $130,000 because Lainie could not compete with them at NCHA
events.  

1. 
Evidence of Ownership

The
NCHA argued in its motion for JNOV and contends on appeal that Lainie presented
no evidence of any property or monetary interest in those three horses.  Ray
testified that the horses belonged to both Lainie and him and were registered in
the name of “Whitmire Ranch,” of which Lainie was a part owner. Lainie also
introduced into evidence the certificates of registration for both Dual Hickory
Nita and Hickory Kit Rio, showing that Whitmire Ranch had purchased the horses
in May and July 2004, respectively.  The certificates of registration show that
they were transferred into Ray’s name on January 20, 2005, just after Lainie
accepted a six-month membership suspension as part of her settlement with the
NCHA.[8]  A letter to Lainie from
the NCHA, signed by Hooper as executive director, noted the NCHA’s
understanding that Whitmire Ranch “is owned in part by Lainie Whitmire.”[9]
 The evidence, viewed in the light most favorable to the verdict, is sufficient
to raise a material fact issue of Lainie’s ownership of the three horses.  See
Ingram, 288 S.W.3d at 893; Wal-Mart Stores, Inc., 102 S.W.3d at 709;
Prudential Ins. Co. of Am., 29 S.W.3d at 77; Playoff Corp., 300
S.W.3d at 454.  

2.  Admissible
Expert Testimony

          Before
addressing whether Lainie presented some evidence to support the jury’s $70,000
damages finding, we will first address the NCHA’s contention, as part of its conditional
cross-appeal, that Johnson’s expert opinion testimony as to the diminished
value of the three horses was inadmissible as unreliable expert testimony.  The
NCHA argues that Johnson’s opinions were based solely on values given to him by
Ray and that Johnson did not conduct an independent evaluation to verify the
accuracy of those numbers.[10] 
 

Admissibility
of expert testimony is a matter within the trial court’s discretion.  K-Mart
Corp. v. Honeycutt, 24 S.W.3d 357, 360 (Tex. 2000); E.I. du Pont de
Nemours & Co. v. Robinson, 923 S.W.2d 549, 558 (Tex. 1995).  A trial
court does not abuse its discretion merely because a reviewing court in the
same circumstances would have ruled differently.  Robinson, 923 S.W.2d
at 558; Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 242 (Tex.
1985), cert. denied, 476 U.S. 1159 (1986).  The trial court abuses its
discretion if its decision is arbitrary or unreasonable without reference to
guiding rules and principles.  Downer, 701 S.W.2d at 241–42.

To
be admissible, an expert witness’s testimony must be relevant and reliable.  Robinson,
923 S.W.2d at 556.  The expert must be qualified, and the testimony must be
relevant and be based on a reliable foundation.  Id.; see Tex. R.
Evid. 702.  Expert testimony may be unreliable if there is too great an
analytical gap between the data upon which the expert relies and the opinion he
offers.  Cooper Tire & Rubber Co. v. Mendez, 204 S.W.3d 797, 800
(Tex. 2006); Gammill v. Jack Williams Chevrolet, Inc., 972 S.W.2d 713,
727 (Tex. 1998).  An expert’s bare opinion will not suffice, and an expert must
explain how his research supports his conclusion.  See Volkswagen of Am.,
Inc. v. Ramirez, 159 S.W.3d 897, 905–06 (Tex. 2004); Kerr–McGee Corp. v.
Helton, 133 S.W.3d 245, 257 (Tex. 2004), abrogated on other grounds by
Coastal Oil & Gas Corp. v. Garza Energy Trust, 268 S.W.3d 1 (Tex. 2008). 
In applying the reliability standard, the trial court does not decide
whether the expert’s conclusions are correct; rather, the trial court
determines whether the analysis used to reach those conclusions is reliable.  Exxon
Pipeline Co. v. Zwahr, 88 S.W.3d 623, 629 (Tex. 2002).

Here,
in a hearing outside the jury’s presence, Johnson testified that he owns a
company that does litigation consulting and horse appraisals and that he has
handled over 500 cases and has appraised over 1,000 horses.  He said that he
was asked to opine on how the Whitmires were hurt by the NCHA’s actions and to
determine the diminished value of the horses based on the NCHA’s actions.[11]
 He testified that in determining the diminished value of the three horses at
issue, he reviewed twenty-eight videos of Lainie riding the horses and took
thirty to forty pages of notes from those videos.  Johnson said that from the
videos, he determined that Lainie rode the horses well, and he judged the
horses’ “confirmations” (or physical make-up as cutting horses) and
performances, all of which he explained factored into his valuation of the
horses.[12]  Johnson explained that a
horse’s bloodline is also an important consideration in valuing cutting horses;
he reviewed the semi-edited show performance pedigrees for the Whitmires’ three
horses, which detailed their performance records and their lineages two or
three generations back.  Johnson also reviewed recent NCHA Futurity sales
prices for other horses, which he explained gave him an idea of the Whitmires’ horses’
values based on what other horses in their lineages had sold for. 

Johnson
also interviewed Ray and Lainie as part of his valuation determination and
learned that they had pre-purchase veterinary exams performed on the three
horses before they bought them and that the horses had no significant
veterinary histories.[13] 
Ray told Johnson what they paid for each horse in 2004 and what he thought he
could get for each horse in 2007, at the time of the interview.  Johnson also
considered the fact that Tommy Marvin is a professional trainer with a
substantial background in the cutting horse business and helped the Whitmires
purchase the three horses.  Johnson testified at the hearing that the prices
paid by the Whitmires for the three horses were appropriate and “legitimate.”  Johnson
testified that he arrived at the diminution in value for each horse by relying
on what Ray told him he bought the horses for and what Ray told him he thought
he could sell the horses for in 2007, in addition to Johnson’s background as a
horse appraiser in the business for forty-five years and the documents and
videos that he reviewed. 

The NCHA
focuses on Johnson’s reliance on Ray’s valuations, but contrary to the NCHA’s
contention, Johnson did more than “simply t[ake] [Ray’s] word” for all of his
findings.  As he explained at the hearing, he conducted his own investigation
and analysis into the value of the three horses both before and after Lainie
lost her NCHA membership and determined that the prices paid by the Whitmires
and the prices that Ray said he could get for the horses in 2007 were
reasonable.  Cf. Helton, 133 S.W.3d at 257 (holding expert’s failure to
explain how various factors affected his calculations rendered opinion
unreliable).  Johnson’s testimony establishes that, in addition to Ray’s
valuations, Johnson also considered Lainie’s riding abilities on each of the
three horses; the horses’ physical compositions, performances, and pedigrees; and
auction results and sales prices for other horses.  Johnson explained how these
considerations factored into the horses’ values.  We conclude that the trial
court could have reasonably concluded that Johnson’s expert opinions were more
than just conclusory, bare assertions based solely on Ray’s valuations.  See,
e.g., Ford Motor Co. v. Ledesma, 242 S.W.3d 32, 40 (Tex. 2007) (holding
that expert’s testimony amounted to more than a recitation of his credentials
and subjective opinion and concluding that appellant’s complaints about expert
testimony went more to its weight, not its admissibility); Page v. State
Farm Lloyds, 259 S.W.3d 257, 268 (Tex. App.—Waco 2008) (concluding that no
significant “analytical gap” existed between expert’s opinions of property
damage and bases for those opinions when expert based them on his knowledge,
training, experience, inspection of the property, data he and others gathered,
and information produced by software program relied on in industry), aff’d
in part, rev’d in part on other grounds, 315 S.W.3d 525 (Tex. 2010); cf.
Hall v. Rutherford, 911 S.W.2d 422, 426 (Tex. App.—San Antonio 1995, writ
denied) (holding attorney’s expert testimony as to the proper standard of care
and alleged legal malpractice was no evidence of legal malpractice when based
solely on factual assertions of an interested party—the appellant—without
further exploration of the evidentiary background of the case).  We hold that
the trial court did not abuse its discretion by admitting Johnson’s testimony,
and we overrule this portion of the NCHA’s cross-appeal.  See Downer,
701 S.W.2d at 241–42.  

3. 
Sufficient Evidence of Damages

Having
held that the trial court did not abuse its discretion by admitting Johnson’s
expert testimony, we must determine whether Lainie provided some evidence to
support the jury’s $70,000 damages finding.    

Johnson
testified in front of the jury similarly to his testimony at the Daubert/Robinson
hearing.  He explained to the jury that, from watching the twenty-eight
videos of Lainie being coached and riding the horses, he determined that she
rides very well and is an excellent student and that the three horses are
sound, built well for use as cutting horses, and well conformed.  Johnson
testified that a “big factor” in a cutting horse’s value is a good rider
because “the horse can be worth a million bucks.  But if the rider doesn’t ride
well, it can soon make that horse worth about zero.  And so the better that
rider does, the more applicable the appraisal value is going to be.” 

Johnson
also testified about the semi-edited performance pedigrees for Can Yall CD
Freckles, Hickory Kit Rio, and Dual Hickory Nita, and the pedigrees were
introduced into evidence.  He explained that the pedigrees show the horses’
lineages two or three generations back and also their performance records.  He
testified specifically about several of the well-known horses in the horses’
pedigrees: Can Yall CD Freckles was sired by a “very famous stallion” and also
has in its lineage four other well-known horses, including “probably one of the
most impressive cutting sires . . . that there’s been”; Hickory Kit Rio’s
lineage includes some of the same top cutting horses as in Can Yall CD Freckles’s
lineage; and Dual Hickory Nita’s “breeding is just first rate.” 

Johnson
also explained that the sales prices of other horses in the bloodline are
important considerations in determining a horse’s value and said that he had reviewed
performance horse sales guides and auction results, which he testified give a
broad idea of the sales prices that certain sire and dam pairings would bring.  Johnson
interviewed Ray, Lainie, and their horse trainer Tommy Marvin about the horses.
 Ray told Johnson that all three horses had a pre-purchase veterinary exam done
before the Whitmires purchased them; the exams showed no problems with the
horses. 

Johnson
testified that the Whitmires paid $55,000 for Can Yall CD Freckles, $35,000 for
Hickory Kit Rio, and $120,000 for Dual Hickory Nita.  He said that, in his
opinion, the prices the Whitmires paid for the three horses were “very
reasonable.”  He further testified to his opinion of the value of the three
horses at the time that he conducted his valuations in 2007:  Can Yall CD
Freckles was worth $40,000, for a loss of $15,000; Hickory Kit Rio was worth
$15,000, for a loss of $20,000; and Dual Hickory Nita was worth $25,000, for a
loss of $95,000.  In 2010, Johnson updated his valuations and determined that
the three horses’ values had not gone up since his 2007 determinations. 

Johnson
testified that the biggest factor in the horses’ diminished values was that
Lainie was prohibited from competing with them at NCHA events and,
consequently, did not have the ability to generate NCHA prize money on them.
Johnson explained that Lainie could compete with the horses only at non-NCHA
cutting events, “which are nowhere near the size or beneficence . . . of the
NCHA.  That means they don’t pay as well.”  He testified that the prize money
at American Quarter Horse Association (AQHA) competitions is much lower than at
NCHA events—$250,000 for an NCHA winner compared to $13,000 for an AQHA winner.
 He said that the Whitmires showed at as many non-NCHA events as they could.  Johnson
opined that Lainie would have been able to maintain the values of the three
horses had she been allowed to ride them at NCHA events and that the total loss
in value of the three horses attributable to Lainie not being able to show at
NCHA events was $130,000.  

On
cross-examination, Johnson testified that he based his valuation of the three
horses on what price Ray said he could get for the horses; Johnson said Ray
knew the market for horses in his area better than he did.   

Jay
Proost, the executive director of the American Society of Equine Appraisers, testified
for the NCHA about his appraisal of the three horses.  Proost testified that in
appraising a horse’s value, he looks at its pedigree, its performance history,
and its production record, if any.  He estimated a diminution in value of
$25,000 for Dual Hickory Nita, $15,000 for Can Yall CD Freckles, and $0 for
Hickory Kit Rio.[14]  He said that the
diminution in value of the three horses was a result of Lainie’s poor riding of
the horses, not her inability to compete at NCHA events. 

Viewing
the evidence in the light most favorable to the verdict and crediting evidence
favoring the jury’s damages finding, we hold that more than a scintilla of
evidence supports the jury’s finding that Lainie was damaged in the amount of
$70,000 by the NCHA’s breach.  See Ingram, 288 S.W.3d at 893; Wal-Mart
Stores, Inc., 102 S.W.3d at 709.  The jury had the discretion to award
damages within the range of evidence presented at trial, and it was entitled to
rely on Johnson’s testimony that the total diminished value of the three horses
was $130,000, as well as Proost’s testimony that the total diminished value was
$40,000, in arriving at its finding of $70,000 in damages.  See Khorshid,
Inc. v. Christian, 257 S.W.3d 748, 761 (Tex. App.—Dallas 2008, no pet.)
(explaining that jury has broad discretion to award damages within the range of
evidence presented at trial, so long as a rational basis exists for its
calculation); Mayberry v. Tex. Dep’t of Agric., 948 S.W.2d 312, 317
(Tex. App.—Austin 1997, writ denied) (same).  

D.  JNOV on Breach of
Contract Claim Erroneously Entered

 

          Having
determined that more than a scintilla of evidence exists to support the jury’s
findings on Lainie’s breach of oral agreement claim and resulting damages, we sustain
this part of her first issue and hold that the trial court erred by
disregarding these findings and entering JNOV that Lainie take nothing on her
breach of oral agreement claim.  

IV.  Cross-Appeal: Excluded Evidence of the NCHA

Having
held that the trial court erred by entering JNOV on Lainie’s breach of oral
agreement claim, we must address the remainder of the NCHA’s conditional
cross-appeal, in which it argues that it was entitled to a new trial based on
the erroneous exclusion of the following evidence:  (1) a brief submitted by
Lainie’s attorney, Walker, to the NCHA executive committee in connection with the
August 21, 2006 appeal hearing; (2) the transcript of the August 21, 2006
hearing; (3) the corresponding testimony of Goins about the brief and the hearing;
and (4) the testimony of NCHA executive committee member and past president
Lindy Burch.   

A. 
Standard of Review

Whether
to admit or exclude evidence is a matter committed to the trial court’s sound
discretion.  See Interstate Northborough P’ship v. State, 66 S.W.3d 213,
220 (Tex. 2001).  To obtain reversal of a judgment based upon an error in the
trial court, the appellant must show that the error occurred and that it
probably caused rendition of an improper judgment or probably prevented the
appellant from properly presenting the case to this court.  Tex. R. App. P.
44.1(a); Romero v. KPH Consolidation, Inc., 166 S.W.3d 212, 225
(Tex. 2005).  Typically, a successful challenge to a trial court’s evidentiary
rulings requires the complaining party to demonstrate that the judgment turns
on the particular evidence excluded or admitted.  Tex. Dep’t of Transp. v.
Able, 35 S.W.3d 608, 617 (Tex. 2000).  And, ordinarily, we will not reverse
a judgment because a trial court erroneously excluded evidence when the
evidence in question is cumulative and not controlling on a material issue
dispositive to the case.  Id. at 617–18; Reina v. Gen. Accident Fire
& Life Assurance Corp., 611 S.W.2d 415, 417 (Tex. 1981).  

B.  Evidence
Relating to August 21, 2006 Hearing

          On
August 21, 2006, the NCHA held an appeal hearing before the executive committee
regarding the denial of Lainie’s non-professional status and the
non-professional committee’s recommendation that her NCHA membership be revoked
for one year; Lainie appeared at that hearing with her attorney, Walker.  Walker
also submitted a “Brief in Support of Appeal of Denial of Non-Professional
Application and Suspension of NCHA Membership” to the executive committee in connection
with the hearing.  The brief included a chronology of events relating to the
suspension of Lainie’s non-professional status leading up to the hearing and an
analysis of the NCHA rules on non-professional-status qualifications.  The
brief did not mention any oral agreement for automatic reinstatement of
Lainie’s non-professional status, and Walker did not mention any such oral
agreement at the hearing.

At
trial, the NCHA attempted to introduce Walker’s full brief as its Exhibit 27A
and a redacted portion of that brief as its Exhibit 27.[15] 
The NCHA also attempted to introduce the full transcript of the August 21, 2006
hearing as its Exhibit 114 and a portion of the transcript redacted to include
only Walker’s statements about the agreement entered into between Goins and
Brewster as NCHA’s Exhibit 114A.  Walker had argued at the hearing that the
agreement reached between Brewster and Goins, including that Lainie’s
non-professional status would be revoked, was “just an agreement reached
between counsel, basically to try to smooth things over and end the fight”; when
asked if he was arguing that the agreement was not binding, Walker said, “I’m
not denying that it was binding, sir.”  The NCHA made an offer of proof and
called Goins to testify about Walker’s brief and the hearing. 

          The
NCHA argued at trial and asserts on appeal that these exhibits, as well as the
related testimony of Goins, constituted an admission on Lainie’s part that
automatic reinstatement of her non-professional status was not part of the
settlement agreement and were admissible to show that Walker and Lainie did not
mention an oral agreement for automatic reinstatement of her non-professional
status at the hearing.  However, Hooper and Goins both testified at trial that
neither Lainie nor anyone on her behalf ever complained to anyone associated
with the NCHA that Goins’s letter did not contain the full agreement reached
between the parties or otherwise assert that she was entitled to automatic
reinstatement of her non-professional status.  Hooper testified that after Lainie
returned to the NCHA in July 2005 following her six-month membership
suspension, neither Lainie nor anyone on her behalf ever requested that the
NCHA honor its agreement to reinstate her non-professional status.  Hooper explained
in detail the correspondence between Lainie, or her attorney on her behalf, and
the NCHA beginning with Lainie’s first application for non-professional status in
October 2005 following her six-month membership suspension and concluding with
a July 7, 2006 letter from Hooper to Lainie informing her of the August 21,
2006 appeal hearing.  Hooper repeatedly testified that at no time during those
communications did Lainie or anyone on her behalf mention an agreement that her
non-professional status be automatically reinstated.  Hooper testified, “The
first time it came up was when this lawsuit . . . was filed, and that was in, I
believe, October of 2006.  So January 2005, agreement reached, settlement,
everything’s done.  Went about their business.  October of 2006, [she claimed] . . .
in the lawsuit, [‘]Oh, by the way, we’ve got this secret agreement.[’]”
 Goins also testified that throughout the correspondence between January 19,
2005 and the filing of this lawsuit, no one ever mentioned an agreement that
was different than that contained in his January 19, 2005 letter.  Lainie’s
October 2005 non-professional application and the written correspondence
between her and the NCHA following the denial of her application were admitted
into evidence.  And Lainie herself testified that she never mentioned the oral
agreement when she reapplied for non-professional status after her six-month
membership suspension was over, explaining that she did not want to get
attorneys involved; the NCHA cross-examined her about her correspondence to the
NCHA that did not mention any oral agreement for reinstatement of her
non-professional status.    

Thus,
the jury was presented with evidence, including the testimony of Lainie herself
and written correspondence from Lainie to the NCHA, that she and her attorney did
not assert the existence of the oral agreement before filing this lawsuit.  The
record demonstrates that the NCHA was allowed to make a fair presentation of
its argument, and the NCHA has not shown that the judgment turned on the
exclusion of this evidence.  See Tex. R. App. P. 44.1(a); Romero,
166 S.W.3d at 225; Able, 35 S.W.3d at 617–18; cf. Sims v. Brackett,
885 S.W.2d 450, 455 (Tex. App.—Corpus Christi 1994, writ denied) (noting in
harm analysis of exclusion of evidence that “[i]f a party is denied the right
to make a fair presentation to the jury, the court has not acted reasonably and
has abused its discretion”).[16]  The excluded testimony
and exhibits would not have added substantial weight to the NCHA’s case, which
included three days of witness testimony and exhibit presentations, but were
instead cumulative of other evidence in the record.  See Able, 35
S.W.3d at 617–18; Reina, 611 S.W.2d at 417.  Even assuming that the
trial court abused its discretion by excluding the evidence, any error was
harmless.  See Tex. R. App. P. 44.1(a).  We overrule this portion of the
NCHA’s conditional cross-appeal.

C. 
Lindy Burch Testimony

          At
trial, the NCHA attempted to call Lindy Burch, arguing that her testimony was
admissible to rebut the testimony of the NCHA’s vice president Harold Eugene
Turner Jr. about Goins’ character.[17]  Turner had testified
that Goins is “an excited kind of guy” and that Turner felt Goins should not be
involved in cases like Lainie’s because he competes in the amateur and
non-professional classes of the NCHA and because of his demeanor.  Turner said
that one of his goals as an officer in the NCHA was to end its relationship
with Goins. 

The
NCHA made an offer of proof, stating that Burch would have testified that she
has been a director and officer in the NCHA for several years and is a past
president; that she has had extensive dealings with Goins as part of her involvement
in the NCHA; and that Goins has never entered into negotiations or agreements beyond
the scope of his authorization and has never failed to inform the NCHA of facts
material to any matter he was working on for the NCHA.  The Whitmires objected
that the testimony constituted hearsay and was irrelevant, cumulative,
misleading, and prejudicial; the trial court sustained their objection.

Assuming
without deciding, for purposes of this case, that the trial court abused its
discretion by excluding Burch’s testimony, any error was harmless.  See Tex.
R. App. P. 44.1(a).  The jury had already heard Hooper’s testimony that was
cumulative of Burch’s proposed testimony; Hooper testified that he has known
Goins since 2000, when Hooper began working at the NCHA, and that during the
time that Hooper has been an executive director with the NCHA, he has never known
of Goins making an agreement on behalf of the NCHA without the executive
committee’s approval.  Hooper also testified that Goins “was a good
communicator.” 

Thus,
even assuming error, because Burch’s testimony was cumulative of Hooper’s
testimony, we cannot say that the exclusion of her testimony harmed the NCHA.  See
Able, 35 S.W.3d at 617–18; Reina, 611 S.W.2d at 417; see also
Nissan Motor Co. Ltd. v. Armstrong, 145 S.W.3d 131, 144 (Tex. 2004)
(explaining that the exclusion of merely cumulative evidence cannot constitute
harmful error).  We overrule the remainder of the NCHA’s conditional
cross-appeal.

V. 
Take-Nothing
Judgment

Properly
Rendered on
False Imprisonment
Claim

 

Lainie
argues in the remainder of her first issue that the trial court erred by
granting JNOV on her false imprisonment claim.  The trial court’s final
judgment orders that Lainie “take nothing against the NCHA on her claim[] for .
. . false imprisonment.”  The jury found that the NCHA had falsely imprisoned
Lainie but also found no damages suffered by Lainie.  Thus, the jury’s no-damages
finding fully supports the court’s take-nothing judgment.  See Intercontinental
Group P’ship v. KB Home Lone Star L.P., 295 S.W.3d 650, 655 (Tex. 2009)
(explaining that trial court should have rendered take-nothing judgment against
plaintiff on its contract claim when jury found breach of contract but answered
“0” on damages); San Antonio Press, Inc. v. Custom Bilt Mach., 852
S.W.2d 64, 66 (Tex. App.—San Antonio 1993, no writ) (stating that trial court’s
take-nothing judgment was supported by jury’s no-damages finding).

Lainie
did not challenge the no-damages finding in a motion for new trial or on
appeal, and we need not otherwise address her challenge to the trial court’s take-nothing
judgment properly entered in accordance with the jury’s no-damages finding.  See
San Antonio Press, Inc., 852 S.W.2d at 66; see also, e.g., Wisenbarger
v. Gonzales Warm Springs Rehab. Hosp., Inc., 789 S.W.2d 688, 694 (Tex. App.—Corpus
Christi 1990, writ denied) (noting, in affirming take-nothing judgment, that “[t]he
damage findings are not challenged on appeal, the findings are final, and we
are bound by such findings”).  We overrule the remainder of Lainie’s first
issue.  

VI. 
The NCHA’s Attorney’s
Fees


 

In their third issue, the Whitmires argue
that the trial court abused its discretion by awarding the NCHA $302,000 in attorney’s
fees for prevailing, via summary judgment, on Lainie’s declaratory judgment
action and $45,000 in attorney’s fees for prevailing, via summary judgment, on Ray’s
declaratory judgment action.[18]   

We
review an award of attorney’s fees under the Uniform Declaratory Judgments Act
(the Act) for an abuse of discretion.  Barshop v. Medina Cnty. Underground
Water Conservation Dist., 925 S.W.2d 618, 637 (Tex. 1996); Orix Capital
Mkts., LLC v. La Villita Motor Inns, J.V., 329 S.W.3d 30, 48 (Tex. App.—San
Antonio 2010, pet. denied).  

Attorney’s
fees may not be recovered unless provided for by statute or by contract between
the parties.  Dallas Cent. Appraisal Dist. v. Seven Inv. Co., 835 S.W.2d
75, 77 (Tex. 1992). “Absent a mandatory statute, a trial court’s jurisdiction
to render a judgment for attorney’s fees must be invoked by pleadings, and a
judgment not supported by pleadings requesting an award of attorney’s fees is a
nullity.”  Alan Reuber Chevrolet, Inc. v. Grady Chevrolet, Ltd., 287
S.W.3d 877, 884 (Tex. App.—Dallas 2009, no pet.).

In a
suit under the Act—chapter 37 of the civil practice and remedies code—a trial
court may award reasonable and necessary attorney’s fees that are just and
equitable.  Tex. Civ. Prac. & Rem. Code Ann. § 37.009.  Under the Act, an
award of attorney’s fees is not limited to the prevailing party.  See
Hartford Cas. Ins. Co. v. Budget Rent-A-Car Sys., Inc., 796 S.W.2d 763, 771
(Tex. App.—Dallas 1990, writ denied).  Where a claimant or a counter-claimant
properly invokes the declaratory judgments statute, either party may plead for
and obtain attorney’s fees. Id.   

In
its answer and counterclaim, the NCHA pleaded specifically for attorney’s fees
as part of its counterclaim, “[p]ursuant to Chapter 38 of the Texas Civil
Practice and Remedies Code,[[19]]
and Rule 41 of the NCHA Rules.”  It did not seek attorney’s fees under the Act,
and it did not make a general request for attorney’s fees in its prayer.  Cf.,
e.g., Nolte v. Flournoy, 348 S.W.3d 262, 270, n.3 (Tex.
App.—Texarkana 2011, pet. denied) (“A party is also not required to request
attorney’s fees with specificity to be eligible for an award under the
Declaratory Judgments Act, so long as a general request for attorney’s fees
exists.”) (emphasis added); Zurita v. SVH-1 Partners, Ltd., No. 03-10-00650-CV,
2011 WL 6118573, at *8 (Tex. App.—Austin Dec. 8, 2011, pet. denied) (mem. op.) (upholding
attorney’s fees awarded to defendant for defending declaratory judgment action
when defendant’s pleadings requested award of attorney’s fees, noting “It is
undisputed that [plaintiff] sought declaratory relief against [defendant] under
the UDJA.  Thus, the trial court was authorized to award attorneys’ fees to any
party with pleadings requesting them.”) (emphasis added).  

The
NCHA’s specific request for attorney’s fees under chapter 38 and under the NCHA
rules was insufficient to invoke the attorney’s fees provision of the Act.  See
Hartford, 796 S.W.2d at 765, 771 (holding defendant who pleaded only
contractual right to attorney’s fees did not invoke attorney’s fees provision
of the Act for defending plaintiff’s declaratory judgment action); Janicek
v. 2016 Main Owners Ass’n, Inc., No. 01-96-00599-CV, 1997 WL 414951, at *5
(Tex. App.—Houston [1st Dist.] July 24, 1997, no writ) (not designated for
publication) (holding defendant, who pleaded specific grounds for attorney’s
fees, did not invoke the Act’s attorney’s fees provision by not pleading for
fees under the Act); see also Kreighbaum v. Lester, No. 05-06-01333-CV,
2007 WL 1829729, at *2 (Tex. App.—Dallas June 27, 2007, no pet.) (mem. op.)
(citing Edlund v. Bounds, 842 S.W.2d 719, 731 n.5 (Tex. App.—Dallas
1992, writ denied) and explaining that pleader confined to specific
allegations, which control over general ones).  Based on the specific facts
of this case, we hold that the trial court abused its discretion by awarding
the NCHA attorney’s fees under chapter 37.[20] 
See Tex. R. Civ. P. 301 (requiring that judgments conform to
pleadings).  We sustain this portion of the Whitmires’ third issue.[21]

VII.  Lainie’s Attorney’s Fees

          In her fourth issue, Lainie
argues that the trial court abused its discretion by not awarding her
reasonable and necessary attorney’s fees after she prevailed on her breach of
contract claim.  The NCHA argues that Lainie is not entitled to attorney’s fees
because she did not timely plead and prove presentment of her oral agreement
claim and because her attorney’s fees claim is unreasonable, excessive, and not
segregated as required by law.

          To
recover reasonable attorney’s fees for a claim based on an oral or written
contract, (1) the claimant must be represented by counsel, (2) the claimant must
present the claim to the opposing party, and (3) payment for the just
amount owed must not have been tendered before the expiration of the thirtieth
day after the claim is presented.  Tex. Civ. Prac. & Rem. Code Ann. §§
38.001(8), .002 (West 2008); see Jones v. Kelley, 614 S.W.2d 95, 100
(Tex. 1981).  If attorney’s fees are proper under section 38.001(8), and the
requisite elements are proven, the trial court has no discretion to deny them.  Smith
v. Patrick W.Y. Tam Trust, 296 S.W.3d 545, 547 (Tex. 2009). 

The
purpose of the presentment requirement is to allow the person against whom the
claim is asserted an opportunity to pay within thirty days of receiving notice
of the claim, thereby avoiding the obligation to pay attorney’s fees.  Goodin
v. Jolliff, 257 S.W.3d 341, 349 (Tex. App.—Fort Worth 2008, no pet.)
(citing Carr v. Austin Forty, 744 S.W.2d 267, 271 (Tex. App.—Austin
1987, writ denied)).  The party seeking attorney’s fees must plead and prove
that he or she presented a contract claim to the opposing party and that the
opposing party failed to tender performance.  Id.; see Chandler v.
Mastercraft Dental Corp. of Tex. Inc., 739 S.W.2d 460, 470 (Tex. App.—Fort
Worth 1987, writ denied).  No particular form of presentment is required.  Goodin,
257 S.W.3d at 349; Jim Howe Homes, Inc. v. Rogers, 818 S.W.2d 901, 905
n.3 (Tex. App.—Austin 1991, no writ).  Oral presentment of a claim is
sufficient to satisfy the requirement.  Jones, 614 S.W.2d at 100.  However,
neither the filing of a suit, nor the allegation of a demand in the pleadings
can, alone, constitute presentment of a claim or a demand that a claim be paid.
 Goodin, 257 S.W.3d at 349; Austin Forty, 744 S.W.2d at 271.

Here,
Lainie had the burden to plead and prove that she made presentment of her claim
of an oral agreement to the NCHA and that the NCHA did not comply with the
claim within thirty days.  See Tex. Civ. Prac. & Rem. Code Ann. §
38.002; Jim Howe Homes, 818 S.W.2d at 904.  Even assuming Lainie
properly pleaded presentment, which the NCHA disputed at trial and disputes on
appeal, the NCHA affirmatively denied presentment.  Thus, Lainie had the burden
to produce specific evidence of presentment.  See Tex. R. Civ. P. 54
(providing that party pleading all conditions precedent have been performed is
not required to prove conditions precedent unless specifically denied by
opposing party); Llanes v. Davila, 133 S.W.3d 635, 641 (Tex. App.—Corpus
Christi 2003, pet. denied).  

As
evidence of presentment, Lainie points to allegations in her pleadings and
evidence presented at trial that, at the conclusion of her six-month membership
suspension, she applied for non-professional status “believing that her
non-professional status would be continued as agreed between Mr. Brewster and
Mr. Goins.”  But nothing in the record indicates that she referenced the oral
agreement in her applications or made demand that the NCHA comply with its oral
agreement prior to filing suit for breach of oral agreement.  See Goodin,
257 S.W.3d at 349.  Consequently, we overrule Lainie’s fourth issue.

VIII.  Conclusion

          Having sustained that
portion of Lainie’s first issue challenging the trial court’s JNOV on her
breach of oral agreement claim, having held that the trial court erred by
disregarding the jury’s findings that the NCHA breached an oral agreement with
Lainie and that Lainie sustained damages in the amount of $70,000.00 as a
result, and having overruled the NCHA’s conditional cross-issues, we reverse
the trial court’s judgment in part and render judgment on the jury’s findings
that Lainie recover $70,000 in damages for the NCHA’s breach of oral agreement.
Having overruled the remainder of Lainie’s first issue challenging the trial
court’s take-nothing judgment on her false imprisonment claim and her fourth
issue on her attorney’s fees, and having sustained the Whitmires’ third issue
on the NCHA’s attorney’s fees, we modify the trial court’s judgment to delete
the NCHA’s recovery of attorney’s fees of $302,000 from Lainie and of $45,000
from Ray and affirm the remainder of the judgment as modified. 

 

 

SUE WALKER
JUSTICE

 

PANEL: 
DAUPHINOT,
WALKER, and GABRIEL, JJ.

 

DELIVERED:  October 11, 2012

 



 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00170-CV

 

 


 
 
 Lainie
 Whitmire and Ray Whitmire
  
  
 v.
  
  
 National
 Cutting Horse Association
 
 
 §
  
 §
  
 §
  
 §
  
  
 
 
 From the 236th District
 Court
  
 of
 Tarrant County (236-220623-06)
  
 October
 11, 2012
  
 Opinion
 by Justice Walker
 
 


 

JUDGMENT

 

          This
court has considered the record on appeal in this case and holds that there was
error in part of the trial court’s judgment.  It is ordered that the judgment
of the trial court is reversed and rendered in part and affirmed as modified in
part.  We reverse that portion of the trial court’s judgment that disregards
the jury’s findings that the National Cutting Horse Association breached an
oral agreement with Lainie Whitmire and that Lainie Whitmire sustained damages
in the amount of $70,000 as a result, and we render judgment that Lainie
Whitmire recover $70,000 in damages for the National Cutting Horse
Association’s breach of oral agreement.  We modify the trial court’s judgment
to delete the National Cutting Horse Association’s recovery of attorney’s fees
of $302,000 from Lainie Whitmire and of $45,000 from Ray Whitmire.  We affirm
the remainder of the judgment as modified. 

          It
is further ordered that all parties shall bear their own costs of this appeal,
for which let execution issue.

 

SECOND DISTRICT COURT OF APPEALS 

 

 

 

By_________________________________

                                                           Justice
Sue Walker

 

 









[1]See Tex. R. App. P. 47.4.





[2]At an NCHA event at the
end of 2004, Lainie was called into the women’s locker room, where she found
several executive committee members and Goins waiting to discuss her
qualifications; the events that transpired in the locker room, which we need
not address here, formed the basis of her false imprisonment and intentional
infliction of emotional distress claims 





[3]See Tex. Civ. Prac.
& Rem. Code Ann. § 37.009 (West 2008) (providing that, in any proceeding
under the Declaratory Judgments Act, the trial court may award reasonable and
necessary attorney’s fees as are equitable and just). 





[4]See id. § 38.001(8)
(West 2008) (providing for recovery of attorney’s fees for claims for oral or
written contracts). 





[5]Ray did not appeal the
summary judgment; he appeals only the trial court’s award of attorney’s fees to
the NCHA for defending his declaratory judgment action. 





[6]Prior to trial, Lainie
nonsuited her claim for intentional infliction of emotional distress.





[7]To the extent that the
NCHA’s arguments could be interpreted to include an argument that the evidence
is insufficient to show that Goins, on behalf of the NCHA, agreed to reinstate
Lainie’s non-professional status as part of the oral settlement agreement, the
testimony of Brewster and Lainie constitutes more than a scintilla of evidence
of that agreement sufficient to support the jury’s implied finding to the
contrary.  See, e.g., Rocor Int’l, Inc. v. Nat’l Union Fire Ins. Co.,
77 S.W.3d 253, 262 (Tex. 2002) (“More than a scintilla of evidence exists if
the evidence furnishes some reasonable basis for differing conclusions by reasonable
minds about a vital fact’s existence.”).





[8]Evidence at trial showed
that the NCHA prohibits horses that are registered in whole or in part in a
non-member’s name from competing at NCHA events and that, consequently, the
horses were transferred into Ray’s name so that they could continue to compete
at NCHA events. 





[9]The letter, dated October
25, 2006, explained that two horses not at issue in this lawsuit could not
compete at an upcoming NCHA event because they were registered in either
Lainie’s name or in the Whitmire Ranch’s name.  The letter stated, “Both the
records of this Association and the AQHA show each of these horses to be owned
in part by Lainie Whitmire or by Whitmire Ranch which we understand is owned in
part by Lainie Whitmire.”  





[10]The NCHA did not
challenge Johnson’s qualifications to determine the diminished value of horses;
it challenged only his ability to testify in this particular case based on his
reliance on Ray’s valuations.   





[11]He explained that
appraising a horse’s value is very similar to determining the diminished value
of a horse and that a lot of the analysis is exactly the same.  





[12]Johnson did not look at
the horses in person; he explained that he seldom does that when appraising a horse
and that the videos are “extremely accurate and show everything about that
horse that you would want to see.”  





[13]Johnson explained that a
pre-purchase veterinary exam determines if the horse is physically sound,
breathes well, has a strong heartbeat, has good eyes, and has good flexion in
all joints. 





[14]Specifically, Proost agreed
that the sales prices paid by the Whitmires for Can Yall CD Freckles and
Hickory Kit Rio ($55,000 and $35,000, respectively) in 2004 were their fair
market values at the time of their purchases.  However, he valued Dual Hickory
Nita at $50,000—rather than the $120,000 purchase price that the Whitmires
paid—at the time of its purchase.  Proost testified that at the time of his
2008 deposition, Can Yall CD Freckles was worth $40,000; Dual Hickory Nita was
worth $25,000; and Hickory Kit Rio was worth $35,000.  Thus, Proost testified
that the total diminished value of the three horses was $40,000, and the
primary monetary difference between his valuation and Johnson’s valuation was the
$70,000 difference between his original valuation of Dual Hickory Nita
($50,000) and Johnson’s ($120,000).





[15]Redacted Exhibit 27 was
the following paragraph 9 of Walker’s brief:

9.  Mr. Goins responded by correspondence dated January
19, 2005 documenting an agreement reached between the parties regarding Ms.
Whitmire’s “Disciplinary Proceedings” whereby: (i) her NCHA membership was
suspended for a period of six months and would be reinstated at the end of the
six month period; (ii) her Non-Pro status was revoked and she was “deemed
non-qualified for non-professional status under the present NCHA rules; (iii)
her amateur status is revoked.  She is advised that “should the NCHA rules
change in the future this proceeding will not prejudice [her] ability to qualify
for various designations as they may in the future exist.”  See Exhibit 9.


 





[16]The NCHA relies on Sims
and Bohmfalk v. Linwood, 742 S.W.2d 518 (Tex. App.—Dallas 1987, no
writ), for the proposition that the excluded evidence added substantial weight
to its case on a “hotly contested” issue and did not merely repeat prior
witnesses’s testimony.  The NCHA argues that the excluded evidence, “if
believed by the jury, would have destroyed [Lainie’s] case on the oral
agreement.”  But we cannot see how this evidence would have added substantial
weight to its case when Lainie herself testified that she did not mention the
oral agreement initially and when the NCHA thoroughly developed this defense
through other witnesses and exhibits.  Cf. Sims, 885 S.W.2d at 453, 455­–56
(holding exclusion of second expert’s testimony was harmful where second expert
did not have a personal relationship with plaintiff like first expert did and
when trial court also denied appellant redirect and recross examination to
rebut appellees’ defenses and present his case).





[17]Portions of the
videotaped deposition of Turner were played for the jury.





[18]Lainie filed suit on
October 10, 2006; the trial court granted the NCHA’s motion for summary
judgment on Lainie’s declaratory judgment action on April 21, 2008.  Ray
asserted a declaratory judgment action on October 17, 2007, and the trial court
granted the NCHA’s motion for summary judgment on Ray’s action on August 23,
2010.   





[19]See Tex. Civ.
Prac. & Rem. Code Ann. § 38.001(8) (“A person may recover reasonable
attorney’s fees from an individual or corporation, in addition to the amount of
a valid claim and costs, if the claim is for . . . an oral or written
contract.”).  





[20]Despite the pleading
deficiency, the issue was not tried by consent; the Whitmires objected to the
award of attorney’s fees to the NCHA on this basis.





[21]We need not address the
remainder of the Whitmires’ third issue or Lainie’s second issue, in which they
argue additional reasons why the trial court’s award of attorney’s fees to the
NCHA should not stand.  See Tex. R. App. P. 47.1.